ACCEPTED
03-14-00535-CV
5406912
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/22/2015 6:01:56 PM
JEFFREY D. KYLE
CLERK

**NO. 03-14-00535-CV**

_____

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

5/22/2015 6:01:56 PM

JEFFREY D. KYLE
Clerk

**David Young,
Appellant,
v.
Trails End Homeowners Association, Inc., TLS Properties, Ltd.,
TLS Operating Company, LLC, Van Keene, and Rick Durapau,
Appellees.**

On Appeal from the 200th Judicial District Court of Travis County, Texas
(Honorable Scott H. Jenkins, of the 53rd Judicial District Court, Presiding)
Trial Court Cause No. D-1-GN-10-003864

_____

**APPELLEES' BRIEF**

Christopher R. Mugica
State Bar No. 24027554
cmugica@jw.com
Emilio B. Nicolas
State Bar No. 24058022
enicolas@jw.com
**Jackson Walker L.L.P.**
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – Fax

**ATTORNEYS FOR APPELLEES
TRAILS END HOMEOWNERS
ASSOCIATION AND VAN
KEENE**

ORAL ARGUMENT NOT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

1.      Appellant

**David Young**

*Represented by:*

Stephen Casey
State Bar No. 24065015
Stephen@caseylawoffice.us
Casey Law Office, P.C.
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681
Telephone:  (512) 257-1324
Facsimile:  (512) 853-4098

2.      Appellees

**Trails End Homeowners Association, Inc.
and Van Keene**

*Represented by:*

Christopher R. Mugica
State Bar No. 24027554
cmugica@jw.com
Emilio B. Nicolas
State Bar No. 24058022
enicolas@jw.com
Jackson Walker L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas  78701
Telephone:  (512) 236-2000
Facsimile:  (512) 236-2002

**Trails End Homeowners Association, Inc.**

*Represented by:*

W. Thomas Buckle
State Bar No. 03299000
tbuckle@sbylaw.com
Jeff Tippens
State Bar No. 24009121
jtippens@sbylaw.com
Scanalan, Buckle & Young, P.C.
602 West 11th Street
Austin, Texas  78701
Telephone:  (512) 478-4651
Facsimile:  (512) 478-7750

**TLS Properties, Ltd. and TLS Operating Company, LLC**

*Represented by:*

Derek Quick
State Bar No. 24072471
derek.quick@strasburger.com
Strasburger & Price, LLP
720 Brazos Street, Suite 700
Austin, Texas  78701
Telephone:  (512) 499-3600
Facsimile:  (512) 499-3660

**Rick Durapau**, *Pro Se*
rdurapau@gmail.com
11907 Misty Brook Drive
Austin, Texas 78727
Telephone:  (512) 346-4359

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..................................................... ii

TABLE OF CONTENTS ............................................................................ iv

TABLE OF AUTHORITIES ...................................................................... ivi

STATEMENT OF THE CASE ..................................................................... 2

STATEMENT REGARDING ORAL ARGUMENT ......................................... 4

ISSUES PRESENTED (RESTATED) ........................................................... 5

PRELIMINARY STATEMENT .................................................................... 6

STATEMENT OF THE FACTS ....................................................................7

    A.    Appellees' Land in the Trail's End Subdivision. ..........................7

    B.    The Disputed Extended Property. ............................................... 9

STANDARD OF REVIEW AND APPLICABLE LAW ..................................... 11

ARGUMENT AND AUTHORITIES ............................................................13

I.    APPELLANT IS BARRED FROM RAISING THE REPLAT ARGUMENT FOR THE FIRST TIME ON APPEAL. ...........................13

    A.    Appellant waived any issue not raised at trial. ..........................13
    B.    The re-plat statute at issue does not apply to this case. ............13
    C.    There has never been a conflict between Lot 52 (or its Disputed Extension) and Appellee's properties. .............15

II.    THE TRIAL COURT PROPERLY DETERMINED THAT APPELLANT'S TITLE-BASED CLAIMS WERE UNTIMELY. ........... 20

    A.    Adverse Possession. .................................................................21
    B.    Limitations began running in 1962. .......................................... 23
    C.    Defendants established adverse possession to Lot 139, Lot 140, and the adjoining 1.4777 acre tract. ........................... 25

III. THIS COURT SHOULD AFFIRM THE FINDINGS OF FACT AND CONCLUSIONS OF LAW BECAUSE THEY ARE LEGALLY SUFFICIENT AND PROPER.............................. 29

    A.    Appellant improperly attempts to disturb the Trial Court's findings of fact with evidence never offered or introduced at trial. ..................................................................... 29

    B.    Even if Appellant's untimely evidence were considered, Appellant nonetheless fails to "conclusively" prove his ownership of the Extended Disputed Property. ...................... 36

    C.    The Trial Court correctly determined the location and metes and bounds of the property and road at issue................ 38

    D.    The conclusive evidence demonstrates Appellant repeatedly and knowingly trespassed on TEHOA's property and the Trial Court appropriately enjoined further trespass. ....................... 40

    E.    This Court should disregard Appellant's arguments which rely on Appellant mischaracterization of the trial record......... 54

    F.    This Court should affirm the award of attorney fees to TEHOA as a result of Appellant's unsuccessful appeal. .......... 55

CONCLUSION AND PRAYER ..................................................... 56

RULE 9.4 CERTIFICATE OF COMPLIANCE............................... 58

CERTIFICATE OF SERVICE....................................................... 59

APPENDIX ............................................................................. 60

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aubrey v. Barlin,*
2014 U.S. Dist. LEXIS 63411 (W.D. Tex. May 7, 2014) .......................... 24

*Best Auto v. Autohaus, LLC,*
339 S.W.3d 372 (Tex. App.—Dallas 2011, no. pet.) ................................. 11

*Boulanger v. Waste Mgmt. of Tex.,*
403 S.W.3d 1 (Tex. App. – Houston [1st Dist.] 2012, pet. denied)......... 33

*Cain v. Bain,*
709 S.W.2d 175 (Tex. 1986) ............................................................. 12, 13

*City of Keller v. Wilson,*
168 S.W.3d 802 (Tex. 2005)....................................................... 11, 35, 44

*Computer Assoc. Int'l., Inc. v. Altai,*
918 S.W.2d 453 (Tex. 1994)................................................................. 24

*Croucher v. Croucher,*
660 S.W.2d 55 (Tex. 1983) ............................................................12, 29

*Davis v. Howe,*
213 S.W. 609 (Tex. Com. App. 1919) .....................................24, 41, 42, 43

*Duderstadt Surveyors Supply, Inc. v. Alamo Express, Inc.,*
686 S.W.2d 351 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) ...........13

*Finkelstein v. Carpenter,*
795 S.W.2d 897 (Tex. App. – Beaumont 1990, writ denied) ...................15

*Fisher v. Beach,*
671 S.W.2d 63 (Tex. App. – Dallas 1984, no writ) ................................. 28

*Ford Motor Co. v. Ridgway,*
135 S.W.3d 598 (Tex. 2004) ....................................................... 12, 16, 22

*Freedom Commn'cs, Inc. v. Coronado,*
  372 S.W.3d 621 (Tex. 2012) (per curiam) .................................................. 30

*French v. Chevron U.S.A.,*
  896 S.W.2d 795 (Tex. 1995) ..................................................................... 33

*HECI Exploration Co. v. Neel*
  982 S.W.2d 881, 887 (Tex. 1998) ......................................................... 22, 23

*Lazarides v. Farris,*
  367 S.W.3d 788(Tex. App. – Houston [14th] Dist. 2012, no pet.).......... 30

*McMillan v. State Farm Lloyds,*
  180 S.W.3d 183 (Tex. App. – Austin 2005, pet. denied) ........................12

*Noble Mortg. & Invs., LLC v. D&M Invs., LLC,*
  340 S.W.3d 65 (Tex. App. – Houston [ 1st Dist.] 2011, no pet.)....... 22, 37

*Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.,*
  878 S.W.2d 598 (Tex. 1994) (per curiam)................................................ 30

*Provident Life & Accident Ins. Co. v. Knott,*
  128 S.W.3d 211 (Tex. 2003).................................................................... 24

*Scott v. Cannon,*
  959 S.W.2d 712 (Tex. App. – Austin 1998, pet. denied) ................... 52, 53

*SEI Bus. Sys., Inc. v. Bank One Tex., N.A.,*
  *803 S.W.2d 838* .................................................................................... 30

*Service Corp. v. Guerra,*
  348 S.W.3d 221 (Tex. 2011) ....................................................................12

*State of California Department of Mental Hygiene v. Bank of*
  *Southwest National Association,*
  354 S.W.3d 576 (Tex. 1962).....................................................................13

*Tex. Women's Univ. v. The Methodist Hosp.,*
  221 S.W.3d 267 (Tex. App. – Houston [1st Dist.] 2006, no pet.) ........... 45

*Wilson v. Fisher,*
  188 S.W.2d 150 (Tex. 1945) ....................................................................15

**STATUTES**

TEX. CIV. PRAC. & REM. CODE .............................................................. 25

TEX. CIV. PRAC. & REM. CODE § 16.021(1) ...................................... 25

TEX. CIV. PRAC. & REM. CODE § 16.021(3) ...................................... 25

TEX. CIV. PRAC. & REM. CODE § 16.023 ........................................... 24

TEX. CIV. PRAC. & REM. CODE §§ 16.024 .......................................... 24

TEX. CIV. PRAC. & REM. CODE § 16.025 ............................... 21, 22, 24

TEX. CIV. PRAC. & REM. CODE § 16.026 ............................................ 21

TEX. PROP. CODE § 13.001 ................................................................. 36

TEX. PROP. CODE § 13.001(A) ......................................................24, 37

TEX. PROP. CODE § 13.002 ........................................... 22, 24, 41, 43

TEX. REV. CIV. STAT. ANN. ART. 974A, § 5 ......................................13

TEX. REV. CIV. STAT. ART. 974A ........................................................13

TEX. REV. CIV. STAT., ART 974A, § 1................................................14

**RULES**

TEX. R. APP. P. 33.1(A) ...................................................................... 55

TEX. R. EVID. 201(D) .......................................................................... 30

TEX. R. EVID. 602 ............................................................................... 28

**OTHER AUTHORITIES**

William V. Dorsaneo III, 17 *Dorsaneo Texas Lit. Guide* § 250.02[1][a]
    (Matthew Bender 2012) ......................................................... 25

## NO. 03-14-00535-CV

_____

### IN THE COURT OF APPEALS
### FOR THE THIRD DISTRICT OF TEXAS
### AT AUSTIN, TEXAS

_____

**David Young,**
**Appellant,**
**v.**
**Trails End Homeowners Association, Inc., TLS Properties, Ltd.,**
**TLS Operating Company, LLC, Van Keene, and Rick Durapau,**
**Appellees.**

On Appeal from the 200th Judicial District Court of Travis County, Texas
(Honorable Scott H. Jenkins, of the 53rd Judicial District Court, Presiding)
Trial Court Cause No. D-1-GN-10-003864

_____

### APPELLEES' BRIEF

TO THE HONORABLE COURT:

NOW COMES Appellees Trails End Homeowners Association, Inc. and Van Keene, appellees herein and defendants before the trial court below, who submit their brief in this appeal of the Trial Court in favor of Appellees, and respectfully show as follows:

## STATEMENT OF THE CASE

Nature of the Case:   This case involves unsubstantiated tort claims arising from a boundary dispute on real estate located along Lake Travis in Travis County, Texas.  The Trial Court correctly found that Appellant failed to satisfy his burden of proof on his title-based claims and various related tort claims, and correctly determined that the evidence presented at trial established certain Defendants' ownership of the specific properties at issue.

Course of Proceedings:   Appellant initiated this action on November 1, 2010, alleging claims against adjacent landowners regarding his claims to their parcels of land along the shoreline of Lake Travis.  (C.R. 3-6)  After cross-motions for summary judgment were denied, this matter was tried to the bench on May 27-28, 2014.  (See R.R. 1:1:20 – R.R. 1:1:24)

Trial Court Disposition:   After Appellant rested, the Trial Court granted Defendants' motion for directed verdict from the bench, dismissing all of Appellant's tort claims. (R.R. 2:139:8 – R.R. 2:139:13)   At the conclusion of the two-day bench trial, the Trial Court granted judgment in favor of Defendants on all of their requested relief. (See R.R. 4:30:6 – R.R. 4:32:9; see C.R. 91-109 (Final Judgment))  Appellant filed its Motion for New Trial on June 30, 2014 (C.R. 112-180), and filed this appeal on August

28, 2014, (C.R. 208-210).

## STATEMENT REGARDING ORAL ARGUMENT

Appellant has not requested oral argument. Appellees believe that oral argument is not warranted in this appeal because this appeal involves established law and undisputed facts proven at trial. Appellant unquestionably failed to meet his burden to present evidence in support of his claims, and Appellees supplied more than ample evidence to support their counterclaims and affirmative defenses. Accordingly, this case is appropriate for disposition by memorandum opinion without the necessity of oral argument. However, to the extent this Court grants Appellant oral argument, Appellees request an opportunity to present oral argument as well.

## ISSUES PRESENTED (RESTATED)

ISSUE 1.    Whether Appellant can challenge the result in the Trial Court based on evidence that was never presented and argument that was never asserted or preserved at trial.

ISSUE 2.    Whether Appellant established superior title in the Disputed Extended Property and, if so, whether proved their claims of adverse possession.

ISSUE 3.    Whether Appellant's broad challenge to the Trial Court's many findings of fact and conclusions of law on legal and factual sufficiency grounds has any merit.

## PRELIMINARY STATEMENT

This is a title and boundary dispute that was commenced nearly 50 years after the filing of the purportedly "botched" plat which Appellant seeks to set aside. Despite being aware of the property interests owned and asserted by Defendants since at least 1997, Appellant waited a dozen years before commencing this action. Appellant's dispute can be summarized as an attempt to disturb property rights that have existed for 60+ years based on language contained in his predecessor's deed which purportedly extended the property "to the center of Big Sandy Creek." As Appellant is aware, Big Sandy Creek extends around a peninsula comprised of land owned by Defendants. Nonetheless, Appellant argues that his "extension property" traverses the portion of Big Sandy Creek nearest his lot, then continues across 2-3 platted lots on the peninsula to end in the other side of Big Sandy Creek.

At trial, Appellant failed to present admissible evidence to prove either his title-based or tort claims. Defendants, however, presented conclusive evidence supporting their ownership of the lands at issue, as well as establishing title by adverse possession. Accordingly, the Trial Court dismissed Appellant's claims and granted a judgment in favor of Defendants on all claims, including their counterclaims. Appellant now

challenges multiple aspects of that Final Judgment and its supporting Findings of Fact by improperly attempting to introduce new arguments as well as evidence that he never even attempted to offer at trial. Because the determination of the Trial Court is sound and well-supported by the record, this Court should affirm.

## STATEMENT OF THE FACTS

### A. Appellees' Land in the Trail's End Subdivision.

More than 60 years prior to the commencement of this litigation, T.L. Smith, Jr. ("T.L. Smith") acquired land along the shores of Lake Travis now known as the Trails End Subdivision in Travis County, Texas. In 1947, T.L. Smith divided much of that property to create various lots[1] and shortly thereafter, divided the remainder of the subdivision in a document that's been referred to as the 1962 Re-Plat or Re-Subdivision No. 5 (the "1962 Plat").[2] With exception of one piece of land ("Lot 56"), from which Lot 139 and 140 were carved out, the 1962 Plat did not modify the existing lots in the 1947 Plat.[3] More importantly, with respect to Appellant's property

---

[1] Pltf.'s Exh. 2 (1947 Plat), *and* R.R. 5:2:7 − 5:2:8 (Plaintiff's Exhibit 2 admitted into evidence).

[2] Def.s' Exh. 6 (1962 Plat), *and* R.R. 5:2:14 − 5:2:16 (Defendants' Exhibit 6 admitted into evidence).

[3] *Compare* Def.s' Exh. 6 (1962 Plat) *with* Pltf.'s Exh. 2 (1947 Plat).

("Lot 52"), there was nothing in the 1962 Plat that affected or modified what was demarcated as Lot 52 in the original 1947 Plat.[4]

After being held by T.L. Smith and his heirs for decades, Defendant TLS Properties, Ltd. ("TLS Properties") formally acquired legal title to Lots 139 and 140 and the 1.4777-acre tract in 1998.[5]  For a period of at least 14 years, Defendant TLS Properties and its predecessors-in-interest leased Lots 139 and 140, as well as a 1.4777-acre tract of land adjoining Lot 139 (the "1.4777-acre tract") to Defendant Trails End Homeowners Association, Inc. ("TEHOA") for use as boat access and lakefront recreation area.[6]  Finally, in 2008, TEHOA actually purchased Lot 139 and the adjacent 1.4777-acre tract from TLS Properties.[7]

---

[4]  *Id.*

[5]  *See* Def.s' Exh. 13 (2004 Lease for Lots 139 and 140), *and* R.R. 5:2:21 – 5:2:23 (Defendants' Exhibit 13 admitted into evidence); *see* R.R. 2:217:7 – 2:218:12 (Smith testifies about the Association's property leases with TLS Properties since 1994); *see also* R.R. 2:215:6 – 2:217:9 (Smith testimony collectively references Lot 139, Lot 140, and the 1.4777-acre tract when referring to "the lots"); *see also* Def.s' Exh. 17 (2008 Deed of Lot 139 from TLS Properties to the Association prior to expiration of the 2004 Lease), *and* Def.s' Exh. 18 (2008 Quitclaim of 1.4777-acre tract from TLS Properties to the Association prior to expiration of the 2004 Lease), *and* R.R. 5:2:24 – 5:3:6 (Defendants' Exhibit Nos. 17 and 18 admitted into evidence).

[6]  R.R. 2:218:8 – 2:218:12 (Smith testimony) ("Q.  And did the association use the lots for the purposes you mentioned earlier for things like boat access or recreation area throughout the time they've leased these properties?  A.  Yes, as far as I know."); *see also* R.R. 2:215:6 – 2:217:9 (Smith testimony collectively references Lot 139, Lot 140, and the 1.4777-acre tract when referring to "the lots"); *see* R.R. 2:231:2 – 2:231:22 (Roberts testimony about the Association's use of the properties).

[7]  Def.s' Exh. 17 (2008 Deed for Lot 139); Def.s' Exh. 18 (2008 Quitclaim for the adjoining 1.4777-acre tract).

## B. The Disputed Extended Property.

In 1997, Appellant David Young ("Appellant" or "Young") acquired Lot 52 of the Trails End Subdivision ("Lot 52")[8] through a 1997 deed which described the land as:

> LOT FIFTY-TWO (52), OF TRAILS END, LAKE TRAVIS SUBDIVISION, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE RECORDED MAP AND/OR PLAT THEREOF, RECORDED IN VOLUME 4, PAGE 331, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS.[9]

In this lawsuit and at trial, Young alleged that some portion of Lot 52 (including a purported extension of its side lines to the center of Big Sandy Creek) encroached upon Lots 139 and 140, and perhaps the adjacent 1.4777-acre tract of land.[10] However, at trial, Appellant did not submit any evidence to show a conflict between Lot 52 and Defendants' properties (i.e., Lot 139, Lot 140, or the 1.4777-acre tract of land). Instead, Appellant focused on an unsubstantiated allegation that he had acquired – in addition to Lot 52 – an unplatted parcel of land belonging to his predecessor in title that purportedly extended side lot lines of Lot 52 across portions of

---

[8] *See* R.R. 2:110:13 – 2:110:24 (Plaintiff testifies that he acquired Lot 52 in 1996); *but see* Appellate Br. at Tab 8 (1997 Deed for Lot 52). The 1997 Deed attached to Appellant's brief as Tab 8 was never offered or admitted at trial; however, Appellant has included it in his appellate record. While Defendants object to the introduction of evidence outside the record, reference is hereby made for purposes of context.

[9] App. Br. at Tab 8 (1997 Deed for Lot 52). Again, Appellant has improperly included this exhibit in his appellate record, even though it was never offered or admitted at trial

[10] *See* C.R. 64-77 at ¶¶ 8-9, 22-31 (Plaintiff's Fourth Amended Original Petition).

9

Defendants' property and to the outer reaches of Big Sandy Creek. According to Appellant, T.L. Smith's filing of the 1962 Plat which created, among other properties, Lots 139 and 140, purportedly encroached upon unidentified portions of the Disputed Extended Property.[11] The figure below depicts the location and placement of the parcels of land.[12]



Crichton
1.4777 Acres

LOT 139

LOT 140

LOT 52

At trial, the only expert testimony presented contradicted Appellant's claims of a title or boundary dispute. Specifically, the evidence demonstrated that no portion of Lot 139, Lot 140 or the 1.4777-acre tract encroached upon or conflicted with Lot 52 or the Disputed Extended Property;[13] and Appellant failed to present any evidence to the contrary.

---

[11] *See id.*

[12] This figure is for explanation only and is not to scale or an accurate, legal description of the property.

[13] *See* R.R. 2:142:19 – 2:142:25, *and* R.R. 2:162:10 – 2:163:7, *and* R.R. 2:202:7 – 2:204:20 (Crichton's testimony about how Lot 139, Lot 140 and the 1.4777-acre tract

## STANDARD OF REVIEW AND APPLICABLE LAW

Appellate courts should give great deference to the fact-finder's decisions regarding weight and credibility of testimony and the resolution of evidentiary conflicts.[14]

A party attacking the complete lack of evidence to support a finding is reviewed under the same legal sufficiency standard, whether the determination was by motion for summary judgment, directed verdict, or otherwise.[15] The reviewing court must consider the evidence in the light most favorable to the nonmovant to determine whether it "produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented."[16] An appellate court should only sustain a no evidence challenge to the legal sufficiency of the evidence when: "(a) there is a complete absence of evidence of a vital fact; (b) the court is barred by

do not conflict with Lot 52 or the Extended Property, how the "gully" is known as "Sandy Creek Arm," how the "gully" is "an arm or branch of Sandy Creek," that the "gully" exists in between Lot 52 and Lot 140, and how the border for the Extended Property lies in the center of the "gully"); *see also* R.R. 2:218:13 – 2:218:22, *and* R.R. 2:220:1 – 2:220:24 (Smith testifies that the "gully" situated between Lot 52 and Lot 140 is "an arm of . . . [Big Sandy Creek]" and serves as the boundary between Lot 52 and Lot 140); *see also* Def.s' Exh. 20 (2005 Steger & Bizzell Survey, which depicts the boundary of Lot 140 as running through the center of the "gully"), *and* R.R. 5:3:7 – 5:3:8 (Defendants' Exhibit 20 admitted into evidence); *see also* Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 – 5:3:9 (Defendants' Exhibit 21 admitted into evidence).

[14] *See City of Keller v. Wilson,* 168 S.W.3d 802, 819-20 (Tex. 2005).

[15] *City of Keller,* 168 S.W.3d at 827 ("the test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review.").

[16] *Best Auto v. Autohaus, LLC,* 339 S.W.3d 372, 374–5 (Tex. App.—Dallas 2011, no. pet.).

rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact."[17] More than a scintilla means the evidence "rises to the level that would enable reasonable and fair-minded people to differ in their conclusions."[18]

A challenge to the factual sufficiency of the evidence submitted at trial is, an argument that a finding is so contrary to the overwhelming weight of the evidence, it must be clearly wrong and unjust.[19] If the appellant argues that there is insufficient evidence to support the adverse finding, then that standard is only applicable on issues in which he did not have the burden of proof at trial.[20] The appellate court should consider and weigh all of the evidence in the record to determine whether the evidence supporting the finding is so weak or the finding is so contrary to the overwhelming weight of the evidence that the finding should be set aside as "clearly wrong and

---

[17] *Service Corp. v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011) (internal quotations omitted).

[18] *Id.* (quoting *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex. 2004)).

[19] *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

[20] *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983) insufficient evidence standard applies when the party without the burden of proof at trial complains of an adverse finding for factual sufficiency); *McMillan v. State Farm Lloyds,* 180 S.W.3d 183, 201 (Tex. App. – Austin 2005, pet. denied).

manifestly unjust."[21]

## ARGUMENT AND AUTHORITIES

## I. APPELLANT IS BARRED FROM RAISING THE REPLAT ARGUMENT FOR THE FIRST TIME ON APPEAL.

### A. Appellant waived any issue not raised at trial.

A significant portion of Appellant's brief is devoted to an argument that the 1962 Plat was an illegal or botched re-plat under Texas law.[22] According to Appellant, such a re-plat "may not be authorized unless permission is obtained from all affected land-owners."[23] However, Appellant never raised this issue or presented this argument to the Trial Court. Accordingly, this argument is waived and merits no further consideration.[24]

### B. The re-plat statute at issue does not apply to this case.

The foundation of Appellant's "illegal re-plat" argument is TEX. REV. CIV. STAT. ANN. ART. 974a, § 5.[25] Even a cursory review of the statute

---

[21] *See Cain,* 709 S.W.2d at 176.

[22] *See* App. Br. at 15 et seq.

[23] *Id.* at 16. Notably, Appellant cites no authority for this point, nor does he explain whether such "illegal re-plat" would be voidable or void ab initio.

[24] *See Duderstadt Surveyors Supply, Inc. v. Alamo Express, Inc.,* 686 S.W.2d 351, 354 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (citing *State of California Department of Mental Hygiene v. Bank of Southwest National Association,* 354 S.W.2d 576, 581 (Tex. 1962)) ("It is well settled Texas law that an allegation not contained in the pleadings nor otherwise raised or proven in the trial court cannot be raised for the first time on appeal.").

[25] App. Br. at 15-17; App. Br. At Tab 3 (copy of TEX. REV. CIV. STAT. ART. 974a) ("TEX. REV. CIV. STAT. ART. 974a").

13

reveals that, had Appellant actually preserved this argument, the statute would nonetheless be wholly inapplicable to the case at bar. For example, by its own express terms, the statute states that it applies to tracts of land "situated within the corporate limits of any city in the State of Texas."[26] The subject properties in this dispute are not located within the city limits, nor is there any evidence they were within the city limits in 1962. Moreover, the statute's purpose was to protect city planners, as evidenced by its requirement that any plan or plat vacated must receive "the approval of the City Planning Commission or governing body of such city."[27] As Appellant is neither an agent nor representative of a city, he lacks standing to allege he was entitled to notice 50 years prior to acquiring Lot 52. Furthermore, notwithstanding Appellant's unsupported argument to the contrary, the 1962 Plat did not actually re-plat any portion of Lot 52. A side-by-side comparison of the two property records reveals that Lot 52 is clearly delineated and demarcated on the 1947 Plat but not shown at all on the 1962 Plat.[28] Accordingly, as Defendants have always maintained,

---

[26] Tex. Rev. Civ. Stat., art 974a, § 1.

[27] *Id.* at § 5.

[28] Indeed, there was no reason for the 1962 Plat to show the relationship between its platting of Lot139, Lot 140 or the 1.4777-acre tract, on the one side, and Lot 52 (or even the Extended Property), on the other side, because the evidence establishes that there is no conflict between those properties. *Supra*, note 13.

Appellant's property is simply the same identical Lot 52 shown in the 1947 Plat.

### C. There has never been a conflict between Lot 52 (or its Disputed Extension) and Appellee's properties.

Indisputably, Young failed to present any evidence at trial, let alone a scintilla of evidence, that describes Lot 52 and the Disputed Extended Property with any reasonable certainty as required by law.[29]  On appeal, Appellant argues that the fact that the Court has the power to declare property rights premised upon his ambiguous description of Lot 52 and the Extended Disputed Property,  yet he failed to present any credible or admissible evidence to the Trial Court to describe or set forth the boundaries of the Disputed Property.  Furthermore, Appellant also failed to offer any evidence to contradict the testimony of Herman Crichton ("Crichton") – the sole testifying property and land survey expert.  Thus, the Trial Court properly disposed of Appellant's title-based claims for lack of evidence and granted relief for TEHOA based on the sole expert opinion presented,  which was corroborated by other evidence,[30] and which

---

[29] For a writing's description of land to be sufficient, it must provide enough data that it can identify the land to be conveyed with reasonable certainty.  *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945); *see also Finkelstein v. Carpenter*, 795 S.W.2d 897, 898 (Tex. App. – Beaumont 1990, writ denied) (ambiguities in the identity of land intended to be conveyed by a deed is a question of fact for the jury).

[30] *Supra*, note 13.

conclusively proved TEHOA's ownership rights in Lot 139 and the 1.4777-acre tract.[31]

Assuming Appellant had even established ownership in the Disputed Extended Property, he never established it conflicted with the properties owned by TLS Properties and TEHOA. Furthermore, Appellant's brief presupposes that there is no dispute with his interpretation of the meaning of "to the center line of Big Sandy Creek" contained in the 1955 Trundle Deed, treating it as if it clearly establishes a conflict with the lots owned by TLS Properties and TEHOA.[32] However, the interpretation of this language was a critical issue at trial, and the evidence established that the only reasonable interpretation was meant as being the center of that portion of Big Sandy Creek between Appellant's Lot 52 and Lot 140 (the lot owned by TLS Properties), sometimes referred to as the "gully."[33]

---

[31] When the evidence offered to prove a fact simply "create[s] a mere surmise or suspicion of the existence of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 601 (Tex. 2004) (internal quotations omitted) ("Evidence that is so slight as to make any inference a guess is in legal effect no evidence.").

[32] Without objection, both Smith (TLS Properties' representative) and Crichton testified that they interpreted the phrase "to the center line of Big Sandy Creek" to mean the center of the "gully" situated between Lots 52 and 140, and not to the center line of that other portion of Big Sandy Creek situated beyond Lot 140 as Appellant would contend. *Supra,* note 13. *Compare* the foregoing, *with* R.R. 4:5:21 – 4:6:7 (Plaintiff's closing argument, wherein Plaintiff contends that the 1955 Trundle Deed designates a section of Big Sandy Creek that is not the "gully" as the intended center line).

[33] *Supra,* note 13.

In Finding of Fact No. 16, the Trial Court correctly adduced that "[t]he Extended Property does not conflict with Lot 139, Lot 140, the 1.4777-acre tract, or West Darleen Drive."[34] Significantly, Appellant offered no competing evidence, including a survey demonstrating an alternative boundary, nor did he offer any expert testimony to support his argument as to where the boundaries should lie. In fact, Appellant has never explained precisely *where* the boundaries should lie if the Court were to accept his position.[35] Accordingly, Appellant never sustained his burden of proof at trial.

Furthermore, the Trial Court's interpretation of the Extended Disputed Property language is supported by the uncontradicted testimony of Bruce Smith ("Smith"), TLS Properties' representative and grandson of T.L. Smith,[36] who testified that in his view, the area between Lot 52 and Lot 140 is a part of Big Sandy Creek.[37] When examining the Travis County Appraisal District maps admitted into the record,[38] Brice Smith explained how those documents also referred to the area between the properties as

---

[34] C.R. 191-93 at p. 4 (Finding of Fact No. 16); *see Supra* note 13.

[35] At a minimum, this inescapable fact would prevent this Court from ever rendering judgment in favor of Appellant, as he requests.

[36] R.R. 2:212:10 – 2:212:12; R.R. 2:213:20 – 2:213:21.

[37] R.R. 2:218:13 – 2:218:22, and R.R. 2:220:1 – 2:220:24.

[38] Def.*s*' Exh. 30 (TCAD Map 0007), *and* R.R. 5:3:10 – 5:3:11 (Defendants' Exhibit 30 admitted into evidence).

"Sandy Creek Arm," which is also the same label used for the main area of the creek (where Appellant apparently believes the extension language is referring to).[39] Smith also referenced the 2005 Steger & Bizzell survey, and how that survey showed the centerline of the Sandy Creek Arm as the boundary between Lot 140 and Lot 52.[40] Smith testified that the boundary shown on the survey was consistent with his understanding of the boundary between Lot 140 and Lot 52.[41]

Also invalidating Appellant's interpretation is Crichton's uncontroverted testimony that he reviewed property records regarding adjoining lots in the area, which contained the same extension language as the Trundle deed, and would have conflicted with platted lots between Lots 53 and 54 and the center of the main arm of Sandy Creek (where Appellant alleges his property extends).[42] In other words, the Trial Court's interpretation of the "extension" language to mean the center of that part of Sandy Creek that is located between Lot 52 and Lot 140 not only eliminated conflict between Appellant's property and TEHOA's and TLS Properties' properties, but it harmonized neighboring property boundaries and

---

[39] *Id.*; R.R. 2:219:7-25.
[40] R.R. 2:220:6-19.
[41] R.R. 2:220:20-24.
[42] R.R. 2:160:21 – 161:11.

avoided new boundary conflicts among property owners who are not parties to this suit.[43]

As for Appellant's nonsensical suggestion that the arm of Sandy Creek between Lot 52 and Lot 140 somehow developed or appeared at some point after the 1947 plat,[44] he points to no evidence to support this claim, and a review of the 1947 Plat, reveals that it does not even label what constitutes Big Sandy Creek (it refers to the main area of the creek as Lake Travis), but *does* depict the arm of the creek running between lots 52, 53, and 54, and Lot 56. (Lot 56 was the lot that was eventually re-platted in 1962 to create Lots 139 and 140).[45] Therefore, Defendants' interpretation does not conflict with the 1947 plat and it harmonizes neighboring property boundaries, while Appellant's unsupported interpretation would create unreasonable conflict between platted properties.

For all these reasons, the Trial Court correctly determined that the Disputed Extended Property does not conflict with Lot 139, Lot 140, the 1.4777-acre tract, or West Darleen Drive,[46] and Appellant has failed to show

---

[43] See Def.s' Exh. 20 (2005 Steger & Bizzell Survey), and Def.s' Exh. 21 (2014 Land Survey), and Pltf.'s Exh. 2 (1947 Plat); R.R. 2:162:10 – 163:2.

[44] *See* App. Br. at p. 20 ("Even if the development of a gully took place between the period of 1947, when the legal plat was formed, the botched 1962 re-plat, and the surveys performed in preparation for the case at bar . . . .").

[45] R.R. 3:60:8-13;

[46] *See* C.R. 181-193 at p. 4 (Findings of Fact No. 16); *see also* C.R. 181-193 at p. 3 (No. 2(f)).

he is entitled to reversal on his title claims regardless of whether he had shown title.

## II. THE TRIAL COURT PROPERLY DETERMINED THAT APPELLANT'S TITLE-BASED CLAIMS WERE UNTIMELY.

Although Appellant's argument – at trial and before this Court – has centered on an attempt to suggest that Defendants have orchestrated a campaign to steal "his land," there has never been any dispute about whether Appellant owns Lot 52. Instead, as set forth in the preceding section, the Disputed Extended Property in this lawsuit is an extension of Lot 52 that Young contends runs over Big Sandy Creek, continues over a portion of Lot 140, and ends in the western most arm of Sandy Creek.[47]

Lot 139 and Lot 140 were created by the 1962 Plat. Thirty-five years later, Appellant purchased Lot 52 from a third-party.[48] Notably, Appellant's 1997 Deed did not purport to convey any of the Disputed Extended Property.[49] In 1998, shortly after Young purchased Lot 52, TLS Properties was deeded Lots 139 and Lot 140.[50]

---

[47] *See* C.R. 64-77 at ¶¶ 8-9 (Plaintiff's Fourth Amended Petition); *see also* Def.s' Exh. 20 (2005 Steger & Bizzell Survey), and Def.s' Exh. 21 (2014 Land Survey).

[48] App. Br. At Tab 8 (1997 Deed for Lot 52).

[49] Again, Appellant's original deed – the 1997 Deed – describes the subject property as only Lot 52 – not including any extended property. *See* App. Br. At Tab 8.

[50] *See* Def.s' Exh. 11, Def.s' Exh. 12 (1998 Special Warranty Deeds), and R.R. 5:2:16 – 5:2:20, Defendants' Exhibits 11 and 12 admitted into evidence).

## A.    Adverse Possession[51]

Mistakenly, Appellant contends that the 1962 Plat was "botched" therefore could never operate to create Lots 139 and 14 and, Texas law requires that a person bring a suit within ten years to recover real property held in peaceable and adverse possession by another who cultivates, uses, and enjoys the property.[52]  Where, as is the case here,[53] another party is claiming the property under a duly registered deed and pays the applicable taxes on the property, the statute of limitations is only five years.[54]

Appellant's live pleading judicially admits that he was dispossessed from the Disputed Extended Property by TLS Properties and/or TEHOA since his purchase in 1997.[55]  Additionally, although TEHOA disputes any claim that Lot 139 or the 1.4777-acre tract encroaches on Lot 52, Appellant

---

[51] In addition to making a general assertion that "No evidence supported adverse possession by [TEHOA]," Appellant challenges many of the individual findings of fact and conclusions of law which support the determination of adverse possession. *Compare* App. Br. at pp. 20-23 (challenging adverse possession), *with* App. Br. at pp. 24-28 (challenging Findings of Fact Nos. 7-8 and 20-22 and Conclusions of Law Nos. 40-41 and 43-44).  In the interest of efficiency, and to avoid repetition, those issues are consolidated into this one section.

[52] TEX. CIV. PRAC. & REM. CODE § 16.026 (10-year statute).

[53] *See* Def.s' Exh. 6 (1962 Plat), *and* R.R. 5:2:14 − 5:2:16 (Defendants' Exhibit 6 admitted into evidence).*; see* Def.s' Exh. 11, Def.s' Exh. 12 (1998 Special Warranty Deeds), *and* R.R. 5:2:16 − 5:2:20 (Defendants' Exhibits 11 and 12 admitted into evidence); *see* Def.s' Exh. 17 (2008 Deed of Lot 139), *and* Def.s' Exh. 18 (2008 Quitclaim of 1.4777-acre tract), *and* R.R. 5:2:24 − 5:3:6 (Defendants' Exhibit Nos. 17 and 18 admitted into evidence); *see* R.R. 2:215:6 − 2:216:4 (Smith testifies that TLS Properties and its predecessors in interest had paid the taxes on Lot 139, 140 and the 1.4777-acre tract the entire time they owned those properties).

[54] TEX. CIV. PRAC. & REM. CODE § 16.025 (5-year statute).

[55] *See* C.R. 64-77 at ¶¶ 8-9, 22-31 (Plaintiff's Fourth Amended Original Petition).

acknowledged that he was dispossessed of the Disputed Extended Property since 1998 when TLS Properties – TEHOA's immediate predecessor in title to Lot 139 – recorded its deeds for Lots 139 and 140.[56]

Furthermore, aside from Appellant's admission that he had been dispossessed from the Disputed Extended Property for nearly twelve years before filing suit,[57] the law holds that he had, at a minimum, constructive notice of TLS Properties' deeds since their filing of public record in 1998. An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument.[58] Recorded instruments in a grantee's chain of title generally establish an irrebuttable presumption of notice.[59] Additionally, a person may also be charged with constructive notice for a deed outside his chain of title if facts appearing in the chain of title through which he claims title would place a reasonably prudent person on inquiry as to the rights of other parties in the property conveyed.[60] Moreover, Appellant acknowledged that documents filed with the real property records for Travis County, Texas puts the public on notice of

---

[56] *id.*

[57] *id.*

[58] TEX. PROP. CODE § 13.002.

[59] *Ford,* 235 S.W.3d at 617; *Noble Mortg. & Invs., LLC v. D&M Invs., LLC*, 340 S.W.3d 65, 76 (Tex. App. – Houston [ 1st Dist.] 2011, no pet.); *see also* HECI Exploration Co. v. Neel, 982 S.W.2d 881, 887 (Tex. 1998) ("The need for stability and certainty regarding titles to real property has led courts to hold that real property records can constitute constructive notice.").

[60] *Noble Mortg.*, 340 S.W.3d at 76.

22

conveyances.[61]  In some circumstances, such as those present in this case, "[c]onstructive notice creates an irrebuttable presumption of actual notice".[62]

It is undeniable that, by the time Appellant commenced this lawsuit on November 1, 2010,[63] the Disputed Extended Property had been subdivided for more than 45 years by way of the 1962 Plat.  Additionally, Lots 139 and 140 and the adjoining 1.4777 acre tract − which Appellant alleges infringe upon his property − had been conveyed by separate deeds for more than twelve years by the time this lawsuit was filed.  Accordingly, Young's title-based claims expired no later than 2008 and are, thus, time-barred as a matter of law.[64]

## B.    Limitations began running in 1962.

In Texas, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting

---

[61] During his opening statement, Appellant states:  "Through all these years, the thing I understand the most is when someone deeds a plat and records it at the county courthouse, the recording is actually just to put people on notice."  R.R. 2:16:12 − 2:16:15.

[62] *HECI*, 982 S.W.2d at 887.

[63] *See* C.R. 3-6 (Plaintiff's Original Petition) and Def.s' Exh. 6 (1962 Plat).

[64] Arguably, since Appellant stands in the shoes of his predecessor, the claims actually accrued when the 1962 Plat was filed 50 years ago in 1962.  See Def.s' Exh. 6 (1962 Plat), and R.R. 5:2:14 − 5:2:16 (Defendant's Exhibit 6 admitted into evidence).

damages have yet to occur.[65]  Regardless of which limitation period applies, all periods began running as early as 1962 when T.L. Smith recorded the 1962 Plat, which provided constructive notice to Appellant and his predecessors in title.[66]  Additionally, the two 1998 deeds conveying Lots 139 and 140 to TLS Properties were also recorded nearly 12 years prior to the commencement of this litigation.[67]  Thus, the 3-, 5-, and 10-year statutes of limitations would bar all of Young's title-based claims.[68]

---

[65] *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003);  *see also Computer Assoc. Int'l., Inc. v. Altai*, 918 S.W.2d 453, 461 (Tex. 1994) ("Under Texas law, the statute of limitations on tort claims generally begins to run when 'the wrongful act effects an injury, regardless of when the plaintiff learned of such an injury.'") (internal citations omitted);  *see also Aubrey v. Barlin*, 2014 U.S. Dist. LEXIS 63411, at *17-20 (W.D. Tex. May 7, 2014) (dismissing under Rule 12(b) claims filed in 2012 against a title company for investments lost in 2009 to be barred by two-year statute of limitations because "it is the *fact* of injury – not when it is discovered – that matters.") (emphasis in original).

[66] TEX. PROP. CODE § 13.002; *Davis v. Howe*, 213 S.W. 609, 610-11 (Tex. Com. App. 1919) ("The law of limitation of actions for land is founded upon notice.  The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim ... '[A recorded deed has], with its registration, distinct from any office as a conveyance of title, the force of notice of the adverse claim to the land.'").  By its explicit language, the Texas Recording Statute applies to "A conveyance of real property *or* an interest in real property *or* a mortgage *or* deed of trust ... ."  TEX. PROP. CODE § 13.001(a) (emphasis added).

[67] *See* Def.s' Exh. 11, Def.s' Exh. 12 (1998 Special Warranty Deeds), *and* R.R. 5:2:16 – 5:2:20 (Defendants' Exhibits 11 and 12 admitted in evidence).

[68] TEX. CIV. PRAC. & REM. CODE §§ 16.024 (3-year statute), 16.025 (5-year statute), 16.026 (10-year statute); *see also* TEX. CIV. PRAC. & REM. CODE § 16.023 (tacking of successive interests).

## C.   Defendants established adverse possession to Lot 139, Lot 140, and the adjoining 1.4777 acre tract.

The 3-, 5-, 10-, and/or 25-year adverse possession statutes of limitations apply to Appellant's title-based claims because, throughout those limitation periods, TEHOA and TLS Properties, respectively, have held record title to Lot 139, Lot 140, and the adjoining 1.4777-acre tract in peaceable and adverse possession; have cultivated, used, or enjoyed those properties; and have paid the taxes on those properties. [69]  Appellant may argue that there has not been a showing of adverse possession by TEHOA or TLS Properties; but the evidence presented at trial clearly established that for a decades TLS Properties (or its predecessor) utilized these tracts of land for lake access and rented the same to TEHOA, prior to consummating the sale of the properties in 2008.

A cursory review of the evidence before the Trial Court, including Young's Fourth Amended Petition, demonstrates that much more than a

---

[69] "Adverse possession" under the Texas Civil Practice and Remedies Code means "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" TEX. CIV. PRAC. & REM. CODE § 16.021(1).  "The elements of an adverse possession claim or defense depend on the statute on which the claim or defense is based." William V. Dorsaneo III, 17 *Dorsaneo Texas Lit. Guide* § 250.02[1][a] (Matthew Bender 2012).  Thus, "possession" and the other elements of an adverse possession **claim** do not apply in the context of an adverse possession statute of limitations **defense**.  Note also that "peaceable possession" means "possession of real property that is continuous and is not interrupted by an adverse suit to recover property." TEX. CIV. PRAC. & REM. CODE § 16.021(3).

scintilla of evidence was presented to the Trial Court to support the findings of adverse possession.[70]

As the Trial Court determined, during the entire time when it owned Lot 139 and the 1.4777-acre tract, TLS Properties either used those properties as preserved areas or parklands, or leased those properties to TEHOA which used them as preserved areas or parklands.[71] This finding was supported by the testimony of Smith at trial, where he noted that the character of Lot 139, Lot 140 and the adjoining 1.4777-acre tract made them usable as, among other things, parklands.[72] Smith also confirmed that TLS Properties had leased Lot 139, Lot 140 and/or the 1.4777-acre tract to TEHOA since at least 1994;[73] and that TEHOA used those properties "for

---

[70] C.R. 64-77 at ¶ 29 (Plaintiff's Fourth Amended Original Petition).

[71] C.R. 181-93 at p. 3 (Finding of Fact No. 7).

[72] *See* R.R. 2:216:5 – 2:216:21 (Smith testimony stating, "Can't build on it [(as in Lot 140)] or anything, but it could be used as a boat launch ramp or a park, that sort of thing. . . . I suppose you could [use Lot 140 as a place to build docks, thinks like that,] out on the road area down there."); *see* R.R. 2:216:22 – 2:217:6 ("Q. And given the nature of Lot 139 and the adjoining tract, is there much that can be done on it besides using it as a park area, a lake access point? A. Right, or access, you know, to the lake.").

[73] R.R. 2:217:7 – 2:218:7 (Smith testimony); *see also* R.R. 2:215:6 – 2:217:9 (Smith testimony collectively references Lot 139, Lot 140, and the 1.4777-acre tract when referring to "the lots"). *See* Def.s' Exh. 13 (2004 Lease), *and* R.R. 5:2:21 – 5:2:23 (Defendants' Exhibit No. 13 admitted into evidence); *see also* Def.s' Exh. 17 (2008 Deed of Lot 139 from TLS Properties to TEHOA prior to expiration of the 2004 Lease), *and* Def.s' Exh. 18 (2008 Quitclaim of 1.4777-acre tract from TLS Properties to TEHOA prior to expiration of the 2004 Lease), *and* R.R. 5:2:24 – 5:3:6 (Defendants' Exhibit Nos. 17 and 18 admitted into evidence). For this reason, Appellant's challenge to the sufficiency of Finding of Fact Nos. 7 and 8 must fail. *See* App. Br. at 24-25.

things like boat access or recreation area throughout the time . . . [TEHOA] leased . . . [those] properties."[74]   His testimony was corroborated by the testimony of June Roberts ("Roberts") (TEHOA's representative)[75] that TEHOA purchased Lot 139 and the 1.4777-acre tract for purpose of allowing its "homeowners that live on the north end of the subdivision to have a closer place to launch their boats and have picnics . . . ."[76]

Moreover, the Trial Court's made numerous findings of fact – unchallenged in this appeal – which support the finding of adverse possession, including "[a]t all relevant times, Lot 139 has been suited for use as a preserved area or parkland;" that "[a]t all relevant times, Lot 140 has been suited for use as a boat launch or other point of access to Lake Travis when underwater, and as a preserved area or parkland when not underwater;" that "[t]he 1.4777-acre tract is suited for use as a preserved area or parkland."[77]

---

[74] *See* R.R. 2:218:8 – 2:218:12 ("Q.  And did the association use the lots for the purposes you mentioned earlier for things like boat access or recreation area throughout the time they've leased these properties?  A.  Yes, as far as I know."); *see also* R.R. 2:215:6 – 2:217:9 (Smith testimony collectively references Lot 139, Lot 140, and the 1.4777-acre tract when referring to "the lots").

[75] R.R. 2:229:11 – 2:229:20 (Roberts testimony).

[76] R.R. 2:230:15 – 2:231:15 (Roberts testimony).

[77] C.R. 181-93 at pp. 1-2 (Finding of Fact Nos. 2(b), (c), 2(e)); *see* Appellant's Br. at pp. 23-28 (Finding of Fact Nos. 2(b) and 2(c) are not among Appellant's laundry list of challenges to specific Findings of Fact and Conclusions of Law, and Appellant's specific challenge to Finding of Fact No. 2(e) does not address the issue).

Even Appellant's untimely attempt to discredit Smith's testimony as speculative[78] fails because Smith's testimony is uncontroverted and based on personal knowledge. Appellant did not object to Smith's testimony on speculation or any other grounds, including lack of personal knowledge; and Smith testified that he had actual knowledge of how TEHOA used Lot 140 during the lease period.[79] Finally Smith's testimony was corroborated by Roberts, who testified that TEHOA had been using Lot 139, Lot 140 and/or the 1.4777-acre tract as a boat launch and/or parkland during their lease of those properties, and up until the time when they purchased Lot 139 and the 1.4777-acre tract.[80]

---

[78] Appellant's Br. at p. 25.

[79] Use of the phrase "as far as I know" does not render Smith's testimony legally incompetent for lack of personal knowledge. To the contrary, the evidence in the record supports a finding that Smith, as the principal of TLS Properties, which owned Lot 140 and leased it to TEHOA, had personal knowledge of the matter. *See* TEX. R. EVID. 602; *see also Fisher v. Beach*, 671 S.W.2d 63, 67 (Tex. App. – Dallas 1984, no writ) (holding in a defamation case that the following deposition testimony was sufficient to reveal that plaintiff "had **actual knowledge** of the [allegedly slanderous] communications prior to . . . [an] indictment: Q [DEFENSE COUNSEL]: So you are saying that Dale Long . . . talked to you and said that Mr. Beach came down and said, I want to file criminal charges against Sam Fisher? A: Yes. Q: And this was before you were indicted, this was before you were served with a warrant? A: **As far as I know**, yes, sir." (emphasis added)).

[80] *See* R.R. 2:231:2 – 2:231:22 (Roberts testimony); *see* R.R. 2:218:1 – 2:218:12 (Smith testifies about TEHOA's property leases with TLS Properties since 1994).

## III. THIS COURT SHOULD AFFIRM THE FINDINGS OF FACT AND CONCLUSIONS OF LAW BECAUSE THEY ARE LEGALLY SUFFICIENT AND PROPER.

Appellant concludes his brief with a laundry list of purported errors in the Trial Court's Findings of Fact and Conclusions of Law, while convoluting the applicable standards of review.[81]  Appellant's arguments are incorrect and insupportable, and this Court should affirm the Final Judgment. In further support of his position, Appellant also seems to argue that the Findings of Fact are legally insufficient under a "no evidence" standard of review.[82] The following responds to remaining challenges generically presented on pages 24-27 of the Appellant's Brief.

### A. Appellant improperly attempts to disturb the Trial Court's findings of fact with evidence never offered or introduced at trial.

Disturbingly and nonsensically, much of Appellant's challenge to the Trial Court's Findings of Fact is premised upon purportedly "conclusive" evidence that Appellant never even attempted to offer or introduce at trial. Instead, Appellant attempts to circumvent established evidentiary rules and standards of review by improperly inserting substantive evidence at the appellate stage and has the audacity to claim that the Trial Court's findings

---

[81] *See* Appellant's Br. at pp. 4, 13-14, 23-28 (arguing the standard of review).

[82] *Compare* Appellant's Br. at pp. 23-24, 27 (arguing the standard of review), *with Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983) ("no evidence" standard of review).

were erroneous because they do not reflect consideration of evidence that was never even presented.

Central to Appellant's argument is his insertion of instruments into evidence on appeal (through an improper request for judicial notice to this Court)[83] which were never furnished to the Trial Court, including the 1997 Deed by which Appellant acquired his interest in Lot 52.[84] The very fact

---

[83] Young incorrectly attempts requests this Court take judicial notice to improperly supplement the appellate record with new evidence. *See, e.g.,* App. Br. at p. 5 n.1 (citing authorities). Defendants acknowledge that appellate courts may judicially notice facts for the first time on appeal. *See Freedom Commn'cs, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (per curiam); *see Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) (per curiam); *see SEI Bus. Sys., Inc. v. Bank One Tex.,* N.A., 803 S.W.2d 838, 840 (Tex. App. – Dallas 1991, no writ); *see* Tex. R. Evid. 201(d). Typically, "appellate courts take judicial notice of facts outside the record only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions which are mandated by law (e.g., calculation of prejudgment interest when the court renders judgment)." *SEI Bus. Sys.*, 803 S.W.2d at 841. But they do not judicially notice facts "which go to the merits of a dispute" because they are not a trier of fact. *Id.* (declining to judicially notice on appeal of the contents of a certified copy of amended articles of incorporation from the Texas Secretary of State's corporation files offered to prove a disputed fact); *Freedom Commn'cs*, 372 S.W.3d at 623-24 (judicially noticing on appeal the contents of a plea agreement admitting judicial misconduct, but only to review its effect on appellate jurisdiction, and not the merits of appeal); *see also* Tex. R. Evid. 201(d) (cannot judicially notice a fact "subject to reasonable dispute"). Young relies on a sweeping generalization of the law to offer "evidence" that goes to the merits of the parties' dispute and this appeal and/or that is reasonably questionable in terms of accuracy. *See, e.g.,* App. Br. at p. 8 n.3 (request for judicial notice of disputed facts). And the cases he cites for support are distinguishable. *See Office of Pub. Util. Counsel*, 878 S.W.2d at 600 (cited in Young's brief) (judicially noticing on appeal a published Public Utility Commission of Texas ratemaking order that was "capable of accurate and ready determination by resort to a published record whose accuracy cannot reasonably be questioned" (emphasis added)); *see Lazarides v. Farris*, 367 S.W.3d 788, 799(Tex. App. – Houston [14th] Dist. 2012, no pet.) (judicially noticing on appeal the fact that minutes of a City Council meeting were published on the City's website, as opposed to the contents of those minutes, because the accuracy of such a fact was not reasonably questionable).

[84] Appellant's Br. at p. 25.

that Appellant deems it necessary to insert Tab 8 to his Appellant's Brief (the 1997 Deed) into the record for the first time on appeal[85] belies his argument that the Trial Court's determination in Finding of Fact No. 14 that, "Plaintiff did not offer any credible evidence that he owns the Extended Disputed Property, as described above [as '[a] parcel of land between the extension of the side lines of Lot 52 to the center line of Big Sandy Creek']."[86]

The Trial Court was only presented with three instruments relevant to Appellant's alleged chain of title:  the 1947 Plat, the 1955 Trundle Deed, and the 1962 Plat.[87]  None of those instruments evidence the conveyance of Lot 52 or the Disputed Extended Property to Appellant, which is a simple fact discrediting Appellant's ownership claim.  Appellant's failure to meet his burden at trial cannot be cured through the introduction of entirely new evidence on appeal. Additionally, the instrument Appellant attempts to offer on appeal further discredit his claim because, although the 1997 Deed

---

[85] Appellant's Br. at Tab 8 (1997 Deed); Defendants object to the inclusion and insertion of Tab 8 into the record for any purpose.

[86] C.R. 181-93 at p. 4 (Finding of Fact No. 14); *see* C.R. 181-93 at p. 2 (Finding of Fact No. 2(d), which describes the Disputed Extended Property).

[87] Pltf.'s Exh. 2 (1947 Deed), *and* R.R. 5:2:7 – 5:2:8 (Appellant's Exhibit 2 admitted into evidence); Pltf.'s Exh. 4 (1955 Trundle Deed), *and* R.R. 5:2:10– 5:2:11 (Appellant's Exhibit 4 admitted into evidence); Def.s' Exh. 6 (1962 Plat), *and* R.R. 5:2:14 – 5:2:16 (Defendants' Exhibit 6 admitted into evidence).

conveys Lot 52 to Appellant, it makes no mention of the Disputed Extended Property.[88]

Similarly, Appellant's challenge to the Trial Court's determination that the Disputed Extended Property did not conflict with Lot 139, 140, or the 1.4777 acre tract is entirely dependent upon the same improper introduction of evidence.[89]   In addition to the reasons set forth above regarding the propriety of challenging factual findings based on evidence never submitted at trial, the Trial Court's findings regarding the lack of conflict between Defendants' properties and the Disputed Extended Property is based upon its determination that the Extended Disputed Property, if any, owned by Appellant consisted only of the underwater portion of land that was in the center of Big Sandy Creek arm that ran between Lot 52 and Lots 139 and 140.   In other words, the Trial Court properly determined that any extended portion conveyed to Appellant (or his predecessors) did not cross Big Sandy Creek into the peninsula that consists of Lot 139 and Lot 140.

Contrary to Appellant's challenge, the meaning of the phrase "to the center line of Big Sandy Creek" in the 1955 Trundle Deed was considered and interpreted by the Trial Court after the presentation of proper

---

[88] Appellant's Br. at Tab 8 (1997 Deed).

[89] App. Br. at p. 25;  *see also* C.R. 181-93 at p. 4. (Finding of Fact No. 16).

evidence.[90]  Without objection, both Smith and Crichton testified that they interpreted the phrase "to the center line of Big Sandy Creek" to mean the center of the portion of Big Sandy Creek to the west of Lot 140 or the portion  of the creek situated between Lots 52 and 140, and not across the peninsula to the center line of that other portion of Big Sandy Creek situated beyond Lot 140.[91]

---

[90] A court may construe an unambiguous deed or other written instrument as a matter of law.  *French v. Chevron U.S.A.*, 896 S.W.2d 795, 796 (Tex. 1995); *Boulanger v. Waste Mgmt. of Tex.*, 403 S.W.3d 1, 6 (Tex. App. – Houston [1st Dist.] 2012, pet. denied).  "If the language is unambiguous, the court's primary duty is to ascertain the intent of the parties from the language of the deed by using the 'four corners' rule." *Id.*  "The 'four corners' canon of construction means that the court must look at the entire instrument to ascertain the intent of the parties."  *Id.* at 797.  "The decision of whether an ambiguity exists is a question of law."  *Boulanger*, 403 S.W.3d at 6.  "If the deed is worded in such a way that it can be given a definite or certain legal meaning, then it is not ambiguous and the court will be confined to the writing."  *Id.* "A mere disagreement about the proper interpretation of a deed, however, does not make the deed ambiguous; the instrument is ambiguous only if, after application of the rules of construction, the deed is reasonably susceptible to more than one meaning."  *Id.*  If the deed is ambiguous, then the court may consider the parties' interpretations of the deed through extrinsic evidence.  *See id.* at 5-6.

[91] *See* R.R. 2:218:13 – 2:218:22, *and* R.R. 2:220:1 – 2:220:24 (Smith testifies that the "gully" situated between Lot 52 and Lot 140 is "an arm of . . . [Big Sandy Creek]" and serves as the boundary between Lot 52 and Lot 140); *see* R.R. 2:142:19 – 2:142:25, *and* R.R. 2:162:10 – 2:163:7, *and* R.R. 2:202:7 – 2:204:20 (Crichton's testimony about how Lot 139, Lot 140 and the 1.4777-acre tract do not conflict with Lot 52 or the Extended Property, how the "gully" is known as "Sandy Creek Arm," how the "gully" is "an arm or branch of Sandy Creek," that the "gully" exists in between Lot 52 and Lot 140, and how the border for the Extended Disputed Property lies in the center of the "gully"); *see also see also* Def.s' Exh. 20 (2005 Steger & Bizzell Survey, which depicts the boundary of Lot 140 as running through the center of the "gully"), *and* R.R. 5:3:7 – 5:3:8 (Defendants' Exhibit 20 admitted into evidence); *see also* Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 – 5:3:9 (Defendants' Exhibit 21 admitted into evidence).  *Compare* the foregoing, *with* R.R. 4:5:21 – 4:6:7 (Appellant's closing argument, wherein Appellant contends that the 1955 Trundle Deed designates a section of Big Sandy Creek that is not the "gully" as the intended center line).

Lot 52 does not appear on the 1962 Plat – since Lot 52 is located on the side of the creek opposite Lots 139 and 140, and because the 1962 Plat was not intended to affect either Lot 52 or its purportedly extended property, T.L. Smith had no reason to identify Lot 52 in the 1962 Plat.[92] This inference is supported by the record.[93] The 1962 Plat was never made subject to the permission of Trundle or her successors in interest because the 1962 Plat never touched upon Lot 52 or its extended property;[94] and so there was no reason for the Trial Court to disregard the 1962 Plat.

Applying the same logic (or lack thereof), Appellant challenges Finding of Fact No. 3,[95] on the basis that there is no evidence that T.L. Smith "could record" the 1962 Plat, or whether T.L. Smith "could . . . show a clear chain of title" for the 1962 Plat because Appellant wants to introduce new evidence to suggest this plat was voidable.[96] Appellant also argues that his challenge to the 1962 Plat also renders the subsequent conveyance of

---

[92] *See id.* It is also worth noting that the 1947 Plat depicts the "gully" as being situated between Lot 52 and Lot 56, with the latter eventually becoming, among other lands, Lots 139 and 140 per the 1962 Plat. *See* Pltf.'s Exh. 2 (1947 Plat), *and* R.R. 3:2:7 – 3:2:8 (Appellant's Exhibit 2 admitted into evidence); *see* Def.s' Exh. 6 (1962 Plat), *and* R.R. 5:2:14 – 5:2:16 (Defendants' Exhibit 6 admitted into evidence).

[93] *See id.*

[94] *See id.*

[95] C.R. 181-93 at p. 3 (Finding of Fact No. 3).

[96] *Compare* C.R. 181-93 at p. 3 (Finding of Fact No. 3), *with* Appellant's Br. at p. 24 (challenge to "Item 3").

Lot 140 voidable under the legal canon of nemo dat quod non habet.[97] Setting aside the unnecessary statements Appellant attempts to insert into the findings, the uncontradicted evidence – admitted without objection – demonstrates that the Travis County public records reflect that the 1962 Plat was filed of record in 1962, thereby creating Lots 139 and 140, which were subsequently conveyed as noted in the Findings of Fact.[98]

Accordingly, setting aside the illogical argument that the Trial Court's determination was flawed because it failed to consider "conclusive" evidence that was never offered by Appellant, it is reasonable to conclude that the Trial Court would afford little weight and credibility to Appellant's argument in light of the 1962 Plat, subsequent conveyances, and unrefuted testimony regarding the location of the "center of Big Sandy Creek" with respect to the properties at issue.[99]

---

[97] Appellant's Br. at pp. 25-26.

[98] *See* Def.s' Exh. 6 (1962 Plat, which states the date of recordation with the Travis County land records), *and* R.R. 5:2:14 – 5:2:16 (Defendants' Exhibit 6 admitted into evidence); Def.s' Exh. 11, 12 (1998 Special Warranty Deeds); R.R. 5:2:16 – 5:2:20 (Defendants' Exhibits 11 and 12 admitted into evidence);

[99] *See City of Keller v. Wilson*, 168 S.W.3d 802, 819-20 (Tex. 2005) (explaining how appellate courts should give great deference to the fact-finder's decisions regarding weight and credibility of testimony and the resolution of evidentiary conflicts).

**B. Even if Appellant's untimely evidence were considered, Appellant nonetheless fails to "conclusively" prove his ownership of the Extended Disputed Property.**

Appellant argues that "conclusive evidence" regarding a written instrument is binding on the Trial Court; that the 1955 Trundle chain is "binding" conclusive evidence of his ownership of the Extended Disputed Property; and that it was reversible error for the Trial Court to disregard such binding conclusive evidence in favor of other evidence that contradicted Appellant's claim of ownership.[100]  The 1955 Trundle Deed included the language "to the center line of Big Sandy Creek," which the Trial Court correctly interpreted in favor of Defendants as explained above with respect to Finding of Fact No. 14.  Additionally, the 1955 Trundle Deed was not recorded until 1978, nearly sixteen years after the 1962 Plat was recorded, thereby rendering TEHOA's ownership claims senior to Appellant's per the Texas Recording Statute, TEX. PROP. CODE § 13.001.[101]  Under the Texas Recording Statute, a ***bona fide purchaser*** prevails over a holder of a prior unrecorded deed or other unrecorded interest in the

---

[100] *See* Appellant's Br. at pp. 23-24, 27.

[101] *Compare* Pltf.'s Exh. 4 (1955 Trundle Deed), *and* R.R. 5:2:10– 5:2:11 (Appellant's Exhibit 4 admitted into evidence), *with* Def.s' Exh. 6 (1962 Plat), *and* R.R. 5:2:14 – 5:2:16 (Defendants' Exhibit 6 admitted into evidence).

same property;[102] and Conclusion of Law Nos. 44 and 45, which Appellant has not specifically challenged in this appeal, state that TEHOA was a "bona fide purchaser" of Lot 139 and the 1.4777-acre tract.[103] Notably, Appellant does attempt to challenge the Trial Court's findings that Defendants were unaware of the potential conflict with Appellant's purported property rights.[104]

Appellant's challenge is also confusing because TEHOA never purchased Lot 140; It only purchased and claimed ownership of Lot 139 and the 1.4777-acre tract.[105] The plain language of Finding of Fact No. 22 does not suggest otherwise.[106] This challenge is also incorrect and unsupported because (a) the portion of the record that Appellant cites to in support of his assertion is an excerpt from TEHOA's closing arguments addressing the unrelated issue of attorney fees,[107] (b) a non-existent portion

---

[102] TEX. PROP. CODE § 13.001(a) ("A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law."); *Noble Mort. Invs., LLC v. D&M Invs., LLC*, 340 S.W.3d 65, 75-76 (Tex. App. – Houston [1st Dist. 2011, no pet.) ("A bona fide purchaser is one who acquires property in good faith, for value, and without notice, constructive or actual, of any third party claim or interest.").

[103] C.R. 181-93 at pp. 7-8 (Conclusion of Law Nos. 45 and 46).

[104] Appellant's Br. at p. 26.

[105] Def.s' Exh. 17-18 (2008 Deed and 2008 Quitclaim), *and* 3:2:24 – 3:3:6 (Defendants' Exhibits 17 and 18 admitted into evidence).

[106] *Compare* C.R. 181-93 at pp. 4-5 (Finding of Fact No. 22), *with* Appellant's Br. at p. 26 (challenging Finding of Fact No. 22).

[107] Appellant's Br. at p. 26 (citing TEHOA's closing argument at R.R. 3:22:6 – 3:22:17).

of the Reporter's Record;[108] and as explained with respect to Finding of Fact No. 20, the testimony transcribed on page 34 of volume 3 of the reporter's record is evidence of nothing but a vague and ambiguous statement by Roberts that she had at unspecified times observed Appellant erecting gates to stop people from accessing unidentified property.[109]

**C.    The Trial Court correctly determined the location and metes and bounds of the property and road at issue.**

Inexplicably, Appellant alleges that "no evidence at all" was presented to the Trial Court to support findings regarding the location of the property and road at issue.    TEHOA acquired the 1.4777-acre tract from TLS Properties under the 2008 Quitclaim.[110]   Crichton testified that he used, among other things, the property descriptions in the 2008 Quitclaim to prepare his 2014 Land Survey.[111]  The 2008 Quitclaim clearly describes the 1.4777-acre tract as adjoining Lot 139.[112].   The 2014 Land Survey clearly

---

[108] Appellant's Br. at p. 26 (nonexistent record citation of line 35).

[109] R.R. 3:34:22-3:34-25 (Roberts testimony)

[110] *See* Def.s' Exh. 18 (2008 quitclaim), *and* R.R. 5:3:5 – 5:3:6 (Defendants Exhibit 18 admitted into evidence).

[111] *See* R.R. 2:150:13 – 2:151:5 (Crichton testifies that Defendants' Exhibit 18 is "a quitclaim deed from TLS Properties to Trails End Homeowners Association that describes a tract that was unplatted but adjacent to the Trails End subdivision – resubdivision No. 5 . . . [and] is a 1.4-acre tract that is described by metes and bounds;" and that he used the property descriptions therein to prepare the 2014 Land Survey); *see also* R.R. 2:150:13 – 2:150:21 (Crichton testifies that Defendants' Exhibit 18 "describes . . . [the 1.4777-acre tract] by metes and bounds").

[112] Def.s' Exh. 18 at p. 3 (Addendum A of the 2008 Quitclaim Deed states, "Beginning at the western most point of ***Lot 139*** . . . follow the western line of ***Lot 139*** N 58 degrees 53 minutes E to a point 122.81 feet from point of beginning.  Said point is

depicts both Lot 139 and the 1.4777-acre tract as adjoining properties with only West Darleen Drive running between them (West Darleen Drive, including the portion known as West Darleen Drive Extension, are referred to herein collectively as "West Darleen Drive"); and Crichton further testified that West Darleen Drive was located adjacent to both Lot 139 and the 1.4777-acre tract (i.e., the roadway runs through a portion of Lot 139 and the 1.4777-acre tract ).[113] This corresponds to the depiction of West Darleen Drive in the 1962 Plat, which also shows the roadway as running through Lots 139 and 140 and far from the portion of Big Sandy Creek situated between Lots 52 and 140.[114] As Crichton testified, the 2014 Land Survey was prepared using, among other things, pins in the ground and an accurate and reliable GPS surveying device.[115] Finally, contrary to

---

also the intersection of the extension of the southern lot line of Lot 134 and the western lot line of **Lot 139**." (emphasis added)).

[113] Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 − 5:3:9 (Defendants' Exhibit 21 admitted into evidence); *see* R.R. 2:164:7 − 2:164:13 (Crichton's testimony about the location of West Darleen Drive Extension).

[114] *Compare* Def.s' Exh. (1962 Plat), *and* R.R. 5:2:14 − 5:2:16 (Defendants' Exhibit 6 admitted into evidence), *with* Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 − 5:3:9 (Defendants' Exhibit 21 admitted into evidence); *see also* R.R. 2:162:10 − 2:163:7, *and* R.R. 2:202:7 − 2:204:20 (Crichton's testimony about how Lot 139 and the 1.4777-acre tract do not conflict with Lot 52 or the Extended Disputed Property, how the "gully" is known as "Sandy Creek Arm," how the "gully" is "an arm or branch of Sandy Creek," that the "gully" exists in between Lot 52 and Lot 140, and how the border for the Extended Disputed Property lies in the center of the "gully").

[115] *See* R.R. 2:154:4 − 2:155:22 (Crichton testifies, in part, as to the preparation of the 2014 Land Survey, including the use of pins and GPS technology); *see also* R.R. 2:147:15 − 2:148:22, R.R. 2:150:6 − 2:151:5 (Crichton testifies that he also reviewed

Appellant's assertion, Finding of Fact No. 2(f) does not establish that the 2014 Land Survey "show[s] the entirety of the [West Darleen Drive] extension;" rather, it establishes that those portions of West Darleen Drive depicted in the 2014 Land Survey are accurate, as evidenced by the following statement: "West Darleen Drive is properly depicted in the 2014 Land Survey."[116] Accordingly, the findings of fact which correspond to the location of the properties and road at issue are supported with legally sufficient evidence.

**D.** **The conclusive evidence demonstrates Appellant repeatedly and knowingly trespassed on TEHOA's property and the Trial Court appropriately enjoined further trespass.**

1. Appellant possessed Constructive and Actual Notice

In a series of illogical and unsupported assertions, Appellant challenges the Trial Court's conclusions of law related to the constructive notice imputed upon Appellant as a result of the filing of certain public records.[117] Specifically, Appellant claims that there could be no constructive notice to him (or his predecessors) that Lot 52 was affected by the 1962 Plat because the plat was "botched." Therefore, (according to Appellant), the

---

the 1947 Plat, the 1962 Plat, the Steger & Bizzell Survey, the 2008 Deed, and the 2008 Quitclaim to prepare the 2014 Land Survey).

[116] *Compare* Appellant's Br. at p. 24 (challenge to "Item 2f"), *with* C.R. 181-93 at pp. 2-3 (Finding of Fact No. 2(f)).

[117] Appellant's Br. at p. 27-28 (challenging Items Nos. 40, 41, 43, and 44)

"botched" 1962 Plat prevented Appellant (and his predecessors) from receiving notice of the claims by T.L. Smith in Lot 139, Lot 140, and the 1.4777 acre tract and further prevented notice of the subsequent filings of the 1998 Deeds to TLS and 2008 Deeds from TLS to TEHOA.

All of these assertions are made by Appellant without any evidentiary or legal support. As explained with respect to Finding of Fact No. 16, there was no reason for the 1962 Plat to show the relationship between its platting of Lots 139 and 140, on the one side, and Lot 52 (or even the Extended Disputed Property), on the other side, because the evidence establishes that there is no conflict between those properties. Moreover, established legal authority further deems that Appellant and his predecessors in title possessed constructive notice of Lot 139 and Lot 140, as well as the 1.4777-acre tract, as early as 1962 when T.L. Smith recorded the 1962 Plat in the Travis County, Texas land records.[118] Registration of the 1962 Plat had "the force of notice of the adverse claim to the land."[119]

---

[118] *See* TEX. PROP. CODE § 13.002*; see Davis v. Howe*, 213 S.W. 609, 610-11 (Tex. Comm'n App. 1919, judgm't adopted) ("The law of limitation of actions for land is founded upon notice. The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim. ... '[A registered deed has], with its registration, distinct from any office as a conveyance of title, the force of notice of the adverse claim to the land.'"). *See* Def.s' Exh. 6 (1962 Plat), *and* R.R. 5:2:14 – 5:2:16 (Defendants' Exhibit 6 admitted into evidence).

[119] *See Davis*, 213 S.W. at 611.

The assertion that "[t]here is no Lot 57 on the 1947 [P]lat" is also incorrect because Lot 57 does in fact appear on the 1947 Plat. It its referenced by the number "57," which appears towards the center of the 1947 Plat, just to the right of the word "scenic" and above the notation "171 Ac."[120]

Moreover, Appellant does not offer any explanation, evidence or legal support for his tortured syllogism that if the 1962 Plat was "botched," and if Appellant could not have known about the 1962 Plat because it was "botched," then Appellant could not have had constructive notice in or after 1998 about TLS Properties' and TLS Operating's respective claims of title to Lot 140 – the only property which the Disputed Extended Property could conflict – under the recorded 1998 Special Warranty Deeds (including the 1998 TLS Properties Deed).[121] Regardless of whether the 1962 Plat is "botched," it remains undisputed that Defendants' deeds were recorded in the Travis County land records no later than 1998; and those recordings alone constituted constructive notice to the world of Defendants' claims of title.[122] Appellant failed to offer any evidence at trial to contradict the

---

[120] *See* Pltf.'s Exh. 2 (1947 Plat), *and* R.R. 3:2:7 – 3:2:8 (Appellant's Exhibit 2 admitted into evidence).

[121] *Compare* Appellant's Br. at p. 28 (Appellant's challenge to Conclusion of Law No. 43), *with* C.R. 181-93 at p. 7 (Conclusion of Law No. 43).

[122] *See* Def.s' Exh. 11, 12 (1998 Special Warranty Deeds), *and* R.R. 5:2:16 – 5:2:20 (Defendants' Exhibits 11 and 12 admitted into evidence). *See Davis v. Howe*, 213

descriptions of the properties in those recordings.[123]  Thus, as a result of each recording, Appellant had constructive notice no later than 1998 that Defendants (and their predecessors in title) claimed ownership in Lots 139, Lot 140, and the adjoining 1.4777 acre tract by title or color of title."[124]

Furthermore, despite his unsupported denials to the contrary, Appellant had actual and constructive notice of the 1962 Plat extension of West Darleen Drive (the unpaved portion).[125]  First, Appellant admitted that he knew about the existence, use and additional construction of West Darleen Drive as a public road as early as 1997; and that he could identify West Darleen Drive in the 1962 Plat, which was recorded in 1962.[126] Thus, there is legally sufficient evidence that Appellant had both actual and constructive knowledge of West Darleen Drive (including any unpaved portions) running through Lots 139 and 140.[127]  Equally important, none of

---

S.W. 609, 610-11 (Tex. Comm'n App. 1919, judgm't adopted) ("The law of limitation of actions for land is founded upon notice.  The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim. ... '[A registered deed has], with its registration, distinct from any office as a conveyance of title, the force of notice of the adverse claim to the land.'").

[123] *See* Appellant's Br. at p. 28 (Appellant's challenge to Conclusion of Law No. 43 and 44).

[124] *See* C.R. 181-93 at p. 7 (Conclusion of Law No. 43); *see also* Def.s' Exh. 11, 12 (1998 Special Warranty Deeds), *and* R.R. 5:2:16 – 5:2:20 (Defendants' Exhibits 11 and 12 admitted into evidence).  *See Davis*, 213 S.W. at 610-11.

[125] Appellant's Br. at p. 26 (challenging Item No. 20).

[126] R.R. 2:109:17-2:113:22, R.R. 2:111:4-2:111:7.

[127] *See also* TEX. PROP. CODE § 13.002, and *Davis v. Howe*, 213 S.W. 609, 610-11 (Tex. Comm'n App. 1919, judgm't adopted) ("The law of limitation of actions for land is

Appellant's "evidence" supports his challenge to the sufficiency of the Trial Court's findings. For example, he cites vague, convoluted, and self-serving passages in his trial testimony that actually establish nothing.[128] Appellant also references citations that either fail to address the issue of notice or simply do not exist.[129] Although Appellant could not identify where he initially erected his blockade, he conceded "these are slightly off my property now...." Appellate courts should give great deference to the fact-finder's decisions regarding weight and credibility of testimony and the resolution of evidentiary conflicts;[130] and such deference favors a holding that Finding of Fact No. 20 is legally sufficient.

Finally, it cannot be said that Appellant "defended any notice vigorously." Again, Appellant testified that he had actual knowledge about the existence, use and additional construction of West Darleen Drive as a public road in the Darleen's Landing area since as early as 1996 or 1997.[131] But he waited until 2010 to file the underlying lawsuit;[132] and never alleged

founded upon notice. The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim. ... '[A registered deed has], with its registration, distinct from any office as a conveyance of title, the force of notice of the adverse claim to the land.'").

[128] Appellant's Br. at p. 26 (citing to R.R. 2:87:5 – 2:87:8, and R.R. 2:87:17 – 2:87:21).

[129] Appellant's Br. at p. 26 (citing to R.R. 3:22:6 – 3:22:14 and R.R. 3:34:35).

[130] *See City of Keller v. Wilson*, 168 S.W.3d 802, 819-20 (Tex. 2005).

[131] R.R. 2:109:17 – 2:113:8 (Appellant testimony).

[132] C.R. 3-6 (Plaintiff's Original Petition filed Nov. 1, 2010).

any affirmative defenses – whether for limitations, laches, or otherwise – to any of TEHOA's counterclaims, including those concerning[133] West Darleen Drive.

>    2.    Appellant Repeatedly Trespassed on Defendant's Lands.

To establish a claim against Appellant for trespass, TEHOA was only required to prove the following: (1) TEHOA owned or had a lawful right to possess the subject real property; (2) Appellant physically, intentionally, and voluntarily entered onto the subject real property; and (3) said entry caused injury to TEHOA's right of possession to the subject real property."[134]   The evidence establishes that TEHOA owned Lot 139 and the 1.4777-acre tract under the 2008 Deed and 2008 Quitclaim, respectively;[135] that, as established above with respect to Finding of Fact No. 26, Appellant did not have TEHOA's permission to block West Darleen Drive;[136] and that, as explained with respect to Finding of Fact Nos. 24, Appellant physically, intentionally, and voluntarily entered on Lot 139 and/or the 1.4777-acre

---

[133] R.R. 2:163:14 – 2:164:13 (Crichton testifies that neither the gate nor the rocks were on Lot 52 when he visited the property, but rather the rocks were "in the right-of-way for West Darleen" that is adjacent to Lot 139 and the 1.4777-acre tract).

[134] *E.g.*, *Tex. Women's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 286 (Tex. App. – Houston [1st Dist.] 2006, no pet.) (trespass elements).

[135] Def.s' Exh. 17, 18 (2008 Deed and 2008 Quitclaim), *and* R.R. 5:2:24 – 5:2:25, 5:3:5 – 5:3:6 (Defendants' Exhibits 17 and 18 admitted into evidence).

[136] Also, Appellant does not seem to specifically challenge on appeal the particular finding in Finding of Fact No. 26 that, "Plaintiff did not have the Association's permission to construct the above-described blockade." C.R. 181-93 at p. 5 (Finding of Fact Nos. 26); *see* Appellant's Br. at pp. 23-28 (Appellant's challenge to Finding of Fact No. 26).

tract to access the portion of West Darleen Drive to erect his blockade, which was situated, in part, on the roadway's adjoining properties, among them the 1.4777-acre tract.

Despite Appellant's assertion to the contrary,[137] the evidence at trial established that Appellant admitted to erecting the blockade on West Darleen Drive;[138] part of the blockade existed for "three, four years;"[139] photographic evidence of the blockade;[140] and Appellant's admission that he moved his blockade *off his property* and onto the adjacent roadway. Any argument that the Trial Court's findings with respect to the existence of the blockade, Appellant's intentional trespass, or its resulting injury is wholly without merit and should be overruled.[141]

Equally absurd is Appellant's position that there is insufficient evidence to the finding that the TLS Defendants and/or their successors could have owned Lot 140[142] because the evidence establishes that Lot 52 and the Extended Disputed Property do not conflict with Lot 140. The evidence also establishes that that TLS Properties and its predecessors in

---

[137] Appellant's Br. at p. 28 (citing to R.R. 2:113:9 – 1:114:22, R.R. 2:236:3 – 2:236:7, R.R. 3:34:35, Pltf.'s Exh. 4, and Def.s' Exh. 6).

[138] *See* R.R. 2:113:9 – 1:114:22 (Appellant testimony).

[139] *See* R.R. 2:236:3 – 2:236:7 (Roberts testimony).

[140] R.R. 3:34:35; *see* Def.s' Exh. 81 (photograph).

[141] Appellant's Br. at 26-27 (challenging Findings of Fact Nos. 18, 20, 21, 23, 24, 26, 27, 28 and Conclusion of Law No. 55).

[142] Appellant's Br. at 27 (challenging Findings of Fact No. 28).

interest were, at all relevant times, the deed record owners of Lot 140.[143] Finally, evidence such as the 2004 Lease between TLS Properties and TEHOA and the uncontroverted testimony of Smith establish that TLS Properties and its predecessors in interest had granted TEHOA and its members permission since at least 1994 to access Lot 140.[144] This finding is further supported by Appellant's failure to specifically challenge on appeal the finding No. 8 that, "During the entire time when it owned Lot 140, and through the present, . . . TLS Properties leased the property to the Association . . . ."[145]

Finally, Appellant challenges the Trial Court's conclusion that Appellant should be permanently enjoined from trespassing onto property that was determined to be owned by Defendants and in which Appellant failed to demonstrate any ownership rights.[146] As the Trial Court correctly found that (a) Appellant failed to establish ownership of Lot 139, Lot 140,

---

[143] *See* Def.s' Exh. 11, 12 (1998 Special Warranty Deeds), *and* R.R. 5:2:16 – 5:2:20 (Defendants' Exhibits 11 and 12 admitted into evidence); *see* R.R. 2:212:2 – 2:214:2, *and* 2:215:6 – 2:217:9, *and* 2:221:21 – 2:222:9 (Smith testimony, wherein he explains, without objection, the ownership and leasing history for Lot 139, Lot 140 and the 1.4777-acre tract).

[144] *See* Def.s' Exh. 13 (2004 Lease for Lots 139 and 140), *and* R.R. 5:2:21 – 5:2:23 (Defendants' Exhibit 13 admitted into evidence); *see* R.R. 2:218:1 – 2:218:12 (Smith testifies about TEHOA's property leases with TLS Properties since 1994).

[145] C.R. 181-93 at p. 3 (Finding of Fact No. 8); *see* Appellant's Br. at pp. 23-28 (Appellant's specific challenge to Finding of Fact No. 8 does not address the issue).

[146] *Compare* Appellant's Br. at p. 28, *with* C.R. 181-93 at p. 9 (Conclusion of Law No. 56).

and/or the 1.4777-acre tract; and the evidence establishes that neither Lot 52 nor the Disputed Extended Property conflicts with Lot 139, Lot 140, or the 1.4777-acre tract;[147] (b) Lots 139 and the 1.4777-acre tract are owned by TEHOA[148] and Lot 140 is owned by TLS Properties;[149] (c) Appellant admitted to erecting the blockade on West Darleen Drive,[150] which TEHOA explained prevented the use and enjoyment of its property by its members;[151] and (d) West Darleen Drive is a public right-of-way easement that runs through Lots 139 and 140.[152]

While Appellant argues that no evidence ever identified continual use of West Darleen Drive across Lot 140,[153] Appellant actually admitted to knowing of West Darleen Drive's use as a public road since as early as 1997.[154] Furthermore, the use of Lot 139, Lot 140 and the 1.4777-acre tract by TEHOA and its members as a boat launch, preserved area and/or parklands has been occurring since 1994.[155]

---

[147] *Supra*, at pp. 17-19.

[148] *See* Def.s' Exh. 17, 18 (2008 Deed and 2008 Quitclaim), *and* R.R. 5:2:24 – 5:2:25, 5:3:5 – 5:3:6 (Defendants' Exhibits 17 and 18 admitted into evidence).

[149] *See* Def.s' Exh. 11, 12 (1998 Special Warranty Deeds), *and* R.R. 5:2:16 – 5:2:20 (Defendants' Exhibits 11 and 12 admitted into evidence).

[150] *See* R.R. 2:113:9 – 1:114:22 (Appellant testimony).

[151] *See* R.R. 2:239:12 – 2:239:22 (Roberts testimony).

[152] *Infra*, at p. 52.

[153] Appellant's Br. at p. 26 (challenge of Finding of Fact No. 21).

[154] R.R. 2:109:17-2:113:22, R.R. 2:111:4-2:111:7.

[155] *Supra*, at pp. 26-27.

Despite his knowledge, as evidenced by the 2014 Land Survey, photographs, and Crichton's testimony, Appellant obstructed the portion of West Darleen Drive that leads into Lot 140.[156] The 2014 Land Survey and Crichton's testimony established that Lot 139 and the 1.4777-acre tract are adjoining properties with West Darleen Drive running through them and into Lot 140.[157] And while Appellant admits that he "tried to block access to . . . [his] property for years" with the blockade,[158] the 2014 Land Survey, the photographs admitted into evidence, and Crichton's testimony contrarily establish that Appellant's blockade obstructed the portion of West Darleen Drive that leads into Lot 140, and that Appellant's obstruction was situated, in part, on the roadway's adjoining properties, among them the 1.4777-acre

---

[156] Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 – 5:3:9 21 (Defendants' Exhibit 21 admitted into evidence); *see* R.R. 2:163:14 – 2:164:13 (Crichton testimony); *see* Def.s' Exh. 81-84 (photographs of West Darleen Drive with and without obstructions); *see* R.R. 5:3:15 – 5:3:19 (admission of Defendants'' Exhibits 81-84 into evidence); *see, e.g.,* Def.s' Exh. 82, R.R. 2:232:1 – 2:232:14, R.R. 2:233:12 – 2:233:16 (Roberts testifies without objection that Defendants' Exhibit 82 is a photograph portraying West Darleen Drive). For this reason, there is sufficient evidence to support Finding of Fact Nos. 23 and 24.

[157] *See* Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 – 5:3:9 (Defendants' Exhibit 21 admitted into evidence); *see* R.R. 2:164:7 – 2:164:13 (Crichton's testimony about the location of West Darleen Drive Extension); *see* R.R. 2:163:14 – 2:164:13 (Crichton testimony).

[158] *See* R.R. 2:113:9 – 2:114:22 (Appellant testimony, with reference to "th[e] road that's depicted in both Defendants' Exhibit 21 and Defendants' Exhibit 6," namely, West Darleen Drive); *see also* Def.s' Exh. 6 (1962 Plat), *and* R.R. 5:2:14 – 5:2:16 (Defendants' Exhibit 6 admitted into evidence); *see also* Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 – 5:3:9 21 (Defendants' Exhibit 21 admitted into evidence).

tract.[159] Thus, it is reasonable to infer that Appellant had to physically, intentionally, and voluntarily entered onto Defendant's lands in order to erect his blockade. Appellant's blockade restricted the TEHOA's ability ***to make full use and enjoyment of*** Lot 139 and the 1.4777-acre tract,[160] as established by Roberts' uncontroverted testimony.[161] It is undisputed that Appellant did not have TEHOA's permission to block access to West Darleen Drive,[162] which Appellant does not specifically challenge on appeal.[163]

### 3. TEHOA Established its Superior Right to Utilize West Darlene Drive

In addition to the foregoing, TEHOA also satisfied its burden for a declaration that West Darleen Drive is a public right-of-way over which it

---

[159] Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 – 5:3:9 21 (Defendants' Exhibit 21 admitted into evidence); *see* R.R. 2:163:14 – 2:164:13 (Crichton testimony); *see* Def.s' Exh. 81-84 (photographs of West Darleen Drive with and without obstructions); *see* R.R. 5:3:15 – 5:3:19 (admission of Defendants'' Exhibits 81-84 into evidence); *see, e.g.,* Def.s' Exh. 82 and R.R. 2:232:1 – 2:232:14 and R.R. 2:233:12 – 2:233:16 (Roberts testifies without objection that Defendants' Exhibit 82 is a photograph portraying West Darleen Drive).

[160] C.R. 181-93 at p. 5 (Finding of Fact No. 27) (emphasis added).

[161] *See* R.R. 2:231:2 – 2:231:22, *and* R.R. 2:239:12 – 2:239:22 (Roberts testifies about the necessity for injunctive relief against Appellant, how TEHOA purchased Lot 139 and the 1.4777-acre tract for its members, and how TEHOA and its members "have not been able to take advantage of . . . [Lot 139 and the adjoining 1.4777-acre tract since the time when the Association purchased those properties for its members] because it has been blocked off [by Plaintiff's blockade].").

[162] *See* R.R. 3:239:5 – 3:239:22 (Roberts testimony explaining the reason why TEHOA is seeking injunctive relief against Appellant with respect to Appellant's blockade).

[163] C.R. 181-93 at p. 5 (Finding of Fact Nos. 26, which states that "Plaintiff did not have the Association's permission to construct the above-described blockade."); *see* Appellant's Br. at pp. 23-28 (Appellant's specific challenge to Finding of Fact No. 26 does not address the issue).

and its members have the right to travel fully and freely.[164] And as explained with respect to Finding of Fact No. 16, West Darleen Drive does not conflict with, or go "over Lot 52."[165] Additionally, Appellant admitted that he knew West Darleen Drive was a "public road" since at least 1997 (more than twelve years before Appellant filed this lawsuit);[166] and that West Darleen Drive appears on the 1962 Plat recorded way back in 1962,[167] and conceded he attempted to blockade West Darleen Drive.[168] Trial evidence also reflected that TEHOA intended to continue making recreational use of the lands but for Appellant's blockade of West Darleen Drive;[169] and that TEHOA made written demand to Appellant for the removal of his blockade,[170] before filing counterclaims in this lawsuit.[171]

---

[164] *Compare* Appellate Brief at p. 28 (challenge to conclusion of Law No. 52), *with* C.R. 181-93 at pp. 8-9 (Conclusion of Law No. 52).

[165] *Supra*, at pp. 17-19.

[166] *See* R.R. 2:109:17 – 2:109:24 and 2:110:19 – 2:110:22 (Appellant admits in his testimony that West Darleen Drive Extension, as depicted in the 1962 Plat and 2014 Land Survey, is "a public road").

[167] R.R. 2:110:19 – 2:110:22 (Appellant admits that West Darleen Drive Extension is depicted in the 1962 Plat); *see* Def.s' Exh. 6 (1962 Plat, which shows West Darleen Drive extending through Lots 139 and 140), *and* R.R. 5:2:14 – 5:2:16 (Defendants' Exhibit 6 admitted into evidence); *see* C.R. 3-6 (Plaintiff's Original Petition filed Nov. 1, 2010).

[168] *See, e.g.,* R.R. 2:113:9 – 2:114:22 (Appellant testimony).

[169] R.R. 2:231:2 – 2:231:22 (Roberts testimony).

[170] *See* R.R. 2:236:25 – 2:237:5 (Roberts testimony).

[171] *See, e.g.,* C.R. 10-36 at ¶¶ 6.01-6.05 (Association's counterclaim for permanent injunctive relief).

Based on the foregoing evidence alone, TEHOA satisfied its burden of establishing West Darleen Drive as a prescriptive right-of-way easement. To establish a prescriptive easement, which is an easement created by "the claimant's adverse actions under a color of right," TEHOA was only required to show the use of Appellant's purported land "in a manner that is open, notorious, continuous, exclusive, and adverse for a period of ten years or more."[172] TEHOA did just that, and Appellant has failed to offer any evidence or legal authorities to the contrary.

In addition, the evidence supports a finding that West Darleen Drive is a public right-of-way easement by express and/or implied dedication. As previously explained by this Court, "'Dedication' is the act of appropriating private land to the public for any general or public use."[173] "Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment of the public."[174] To prove an easement by ***implied*** dedication, TEHOA was only required to show that: (a) the acts of T.L. Smith (as the owner of the lands giving rise to the 1962 Plat) induced the belief that he intended to dedicate the road to public use; (b) T.L. Smith owned the land in fee simple and therefore was competent to dedicate the

---

[172] *Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App. – Austin 1998, pet. denied).

[173] *Id.* at 718.

[174] *Id.*

52

land; (c) the public relied on those acts and will be served by the dedication; and (d) there was an offer and acceptance of the dedication.[175] The record establishes just that. As explained throughout, T.L. Smith owned the lands re-platted by the 1962 Plat, and had the right to re-plat those lands;[176] the 1962 Plat's depiction of West Darleen Drive as "W. Darleen Extension" and as running through Lots 139 and 140 suggest that T.L. Smith intended for a public road;[177] Appellant testified that he had actual notice of West Darleen Drive's existence and use as a "public road" since at least 1997 (more than ten years before Appellant filed the underlying lawsuit in late 2010);[178] Appellant further testified that West Darleen Drive's pavement had been extended by "[t]he County;"[179] as explained with respect to Finding of Fact No. 40, Appellant and his predecessors in title had constructive notice of the 1962 Plat since 1962;[180] Roberts testified that TEHOA and its members used West Darleen Drive as the means of accessing Lots 139 and the 1.4777-

---

[175] *Id.*

[176] *See* R.R. 2:212:2 – 2:214:2, 2:215:6 – 2:217:9, 2:221:21 – 2:222:9 (Smith testimony, wherein he explains, without objection, the ownership and leasing history for Lot 139, Lot 140 and the 1.4777-acre tract); *see also* Def.s' Exh. 6 (1962 Plat, which identifies T.L. Smith, Jr. as an owner of the re-platted property), *and* R.R. 5:2:14 – 5:2:16 (Defendants' Exhibit 6 admitted into evidence).

[177] *See* Def.s' Exh. 6 (1962 Plat), *and* R.R. 5:2:14 – 5:2:16 (Defendants' Exhibit 6 admitted into evidence).

[178] *See* R.R. 2:109:17 – 2:109:24, 2:110:19 – 2:110:22 (Appellant admits that West Darleen Drive Extension, as depicted in the 1962 Plat and 2014 Land Survey, is "a public road").

[179] R.R. 2:110:7 – 2:110:12 (Appellant testimony).

[180] *Supra*, at p 24, pp. 40-43.

acre tract;[181] and there was an offer and acceptance of the dedication through the conveyances of Lots 139, 140 and the 1.4777-acre track to TEHOA and/or TLS Properties.[182] Thus, the evidence supports a finding that West Darleen Drive is a public right-of-way easement by express and/or implied dedication. For this additional reason, the Trial Court's award of a permanent injunction to prevent Appellant from any further obstruction or interference with TEHOA's ingress and egress over West Darleen Drive was proper and should not be disturbed by this Court.

**E.** **This Court should disregard Appellant's arguments which rely on Appellant mischaracterization of the trial record.**

The following addresses several instances in which the Appellate Brief mischaracterizes the trial record. The Court should disregard each of Appellant's arguments which rely on those mischaracterizations.

On page 9 of the Appellate Brief, Appellant states: "Crichton references a 'pin 13' in finding the supposed northwest corner of Lot 52, but at no point on any plat or prior survey is pin 13 identified. [R.R. 2:152:22 – R.R. 2:153:5.]"[183] This assertion is incorrect because "pin 13" appears in the

---

[181] *See* R.R. 2:231:2 – 2:231:22, 2:239:12 – 2:239:22 (Roberts testimony).

[182] *See* Def.s' Exh. 11, 12 (1998 Special Warranty Deeds), *and* R.R. 5:2:16 – 5:2:20 (Defendants' Exhibits 11 and 12 admitted into evidence); *see* Def.s' Exh. 17, 18 (2008 Deed and 2008 Quitclaim), *and* R.R. 5:2:24 – 5:2:25, 5:3:5 – 5:3:6 (Defendants' Exhibits 17 and 18 admitted into evidence).

[183] Appellant's Br. at p. 9.

2014 Land Survey, which was prepared by Crichton and admitted into evidence without objection.[184] The 2014 Land Survey references "pin 13" by the number "13," which appears right-adjacent to a dot drawn on the exhibit's illustration of the top-left corner of Lot 52 (identified in the 2014 Land Survey by the notation "52").[185] To help illustrate this point, an enlargement of this section of the 2014 Land Survey is attached hereto as Tab C. And since Appellant did not object to the visual clarity or appearance of "pin 13" on the 2014 Land Survey, he has waived his right to do so on appeal.[186] Thus, this Court should disregard each of Appellant's arguments which rely on Appellant's mischaracterization of "pin 13."

### F. This Court should affirm the award of attorney fees to TEHOA as a result of Appellant's unsuccessful appeal.

Among other things, the Final Judgement awards TEHOA $20,000.00 for attorney fees incurred in connection with Appellant's unsuccessful appeal of the lawsuit to this Court, together with post-

---

[184] *See* Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 – 5:3:9 21 (Defendants' Exhibit 21 admitted into evidence); *see also* R.R. 2:151:21 – 2:154:9 (Crichton identifies "pin 13" on Defendant's Exhibit 21, and then testifies that pin 13 establishes the intended location of the northwest corner of Lot 52).

[185] *See* Def.s' Exh. 21 (2014 Land Survey), *and* R.R. 5:3:8 – 5:3:9 21 (Defendants' Exhibit 21 admitted into evidence).

[186] *See, e.g.,* TEX. R. APP. P. 33.1(a) (generally, to preserve error for appeal, the record must show that the error was brought to the trial court's attention by a timely request, objection or motion). *See also* R.R. 2:153:21 – 2:154:3 (Crichton testifies about the location of "pin 13" without objection).

judgment interest thereon.[187]  This Court should affirm this award, as well as all other attorney fee and interest awards to TEHOA rendered in the Final Judgment, because Appellant has failed to challenge them on appeal, and, as argued herein, Appellant should not succeed in his appeal of the lawsuit to this Court.

## CONCLUSION AND PRAYER

For the reasons set forth in the Findings of Fact and Conclusions of Law, Defendants were entitled to dismissal of all claims asserted by Appellant and for a judgement in their favor.  A review of the Trial Court evidence, including Appellant's admissions, reflects that the Trial Court's judgment was not in error.  Appellant offered no competent or admissible evidence to support its claims, nor did Appellant contradict the evidence supplied by Defendants.  Accordingly, Defendants request that this Court overrule Appellant's issues and challenges, affirm the Findings of Fact and Conclusions of Law supporting the Trial Court's judgment, and render judgment against Appellant.  Defendants further request any and all other relief to which it may be entitled.

---

[187] C.R. 91-109 at pp. 3-4 (Final Judgment's attorney fee and interest awards).

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: */s/ Christopher R. Mugica*

Christopher R. Mugica
State Bar No. 24027554
cmugica@jw.com
Emilio B. Nicolas
State Bar No. 24058022
enicolas@jw.com
**Jackson Walker L.L.P.**
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – Fax

**ATTORNEYS FOR APPELLEES
TRAILS END HOMEOWNERS
ASSOCIATION AND VAN
KEENE**

# RULE 9.4 CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 14,335 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Christopher R. Mugica*
Christopher R. Mugica

## CERTIFICATE OF SERVICE

This is to certify that on this 22nd day of May, 2015, a true and correct copy of the above and foregoing document was electronically mailed to the parties registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this Court and/or via certified mail, return receipt requested upon:

Stephen Casey
Casey Law Office, P.C.
595 Round Rock West Drive
Suite 102
Round Rock, Texas 78681
stephen@caseylawoffice.us
***Counsel for Appellant David Young***

Derek Quick
Strasburger & Price, LLP
720 Brazos Street, Suite 700
Austin, Texas 78701
derek.quick@strasburger.com
***Counsel for Appellees TLS Properties, Ltd. and TLS Operating Company, LLC***

W. Thomas Buckle
Jeff Tippens
State Bar No. 24009121
Scanalan, Buckle & Young, P.C.
602 West 11th Street
Austin, Texas 78701
tbuckle@sbylaw.com
jtippens@sbylaw.com
***Counsel for Appellee Trails End Homeowners Association, Inc.***

Rick Durapau, *Pro Se*
11907 Misty Brook Drive
Austin, Texas 78727
rdurapau@gmail.com
***Pro Se Appellee***

*/s/ Christopher R. Mugica*
Christopher R. Mugica

_____

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN, TEXAS

_____

**David Young,**
**Appellant,**
**v.**
**Trails End Homeowners Association, Inc., TLS Properties, Ltd.,**
**TLS Operating Company, LLC, Van Keene, and Rick Durapau,**
**Appellees.**

_____

On Appeal from the 200th Judicial District Court of Travis County, Texas
(Honorable Scott H. Jenkins, of the 53rd Judicial District Court, Presiding)
Trial Court Cause No. D-1-GN-10-003864

_____

**APPENDIX**

_____

**TAB A**     2005 Steger & Bizzell Survey

**TAB B**     2014 Land Survey

**TAB C**     Enlargement of "pin 13" of the 2014 Land Survey

12389315v.8

# TAB A

SCALE:1"=100'

LEGEND
● – IRON PIN FOUND
○ – IRON PIN SET

Survey For
Trails End Homeowners Association
Lots 139 & 140
Resubdivision No.5, Block #57
Trails End Subdivision
Travis County, Texas

Steger & Bizzell Engineering, Inc.
Consulting Engineers                    Surveyors
1978 South Austin Avenue
Georgetown, Texas 78626
Telephone                    Facsimile
(512)930-9412    (512)930-9416

(L:\ ACAD Drawings\ 20762-Trail's End-139-140\ base.dwg.)
DRAWN BY: JPS    REVIEWED BY: BFP    APPROVED BY: BFP
JOB No. 20762

TEHOA 00191

Note: Deeds of record as Document No. 1999001444
and 2003287163 Official Public Records of Travis
County, Texas, call for west line to be the center
of Big Sandy Creek.
Since an extension of these lots to Big Sandy Creek
would create a conflict with plats and deeds of record,
this survey shows the
west lines of these tracts to be the Gully as shown
on the plat of the Resubdivision No.5, Block #57 Trails
End Subdivision.

STATE OF TEXAS          }  KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF WILLIAMSON    }

I, Brian F. Peterson, Registered Professional Land Surveyor, do hereby certify that
the plat shown hereon accurately representing the property as described by an
on-the-ground survey made under my direction and supervision during the month
of December, 2005 of the property legally described hereon and is correct, and there
are no apparent discrepancies, conflicts, shortages in area, boundary line or
conflicts, encroachments, overlapping of improvements, visible utility lines or roads
in place, except as shown hereon.

TO CERTIFY WHICH, WITNESS my hand and seal at Georgetown, Williamson
County, Texas, this the 7th day of December, 2005 A.D.

Brian F. Peterson
Registered Professional Land Surveyor, No. 3067
State of Texas

Note: 655.2 Contour and location of gully
under water are shown by approximation only.

FLOOD STATEMENT: I HAVE EXAMINED THE FEDERAL INSURANCE
ADMINISTRATION'S FLOOD MAP FOR TRAVIS COUNTY, TEXAS,
COMMUNITY No. 481079 EFFECTIVE DATE OF APRIL 1, 1996
AND THAT THIS PROPERTY IS WITHIN ZONE A (SPECIAL FLOOD
HAZARD AREA) AS SHOWN ON PANEL 0206B OF SAID MAP.
WARNING: THIS PLAT IS NOT WITHIN AN IDENTIFIED SPECIAL
FLOOD HAZARD AREA, THIS FLOOD STATEMENT DOES NOT IMPLY
THAT THE PROPERTY AND/OR STRUCTURES THEREON WILL BE
FREE FROM FLOODING OR FLOOD DAMAGE. ON RARE OCCASIONS,
GREATER FLOODS CAN AND WILL OCCUR AND FLOOD HEIGHTS MAY
BE INCREASED BY MAN-MADE OR NATURAL CAUSES. THIS FLOOD
STATEMENT SHALL NOT CREATE LIABILITY ON THE PART OF THE
SURVEYOR.

BRIAN F. PETERSON
3067

LCRA Records
Lake Travis Elevation
9/13/1962    655.2

# TAB B

TEHOA 00544



SURVEY SHOWING RELATIONSHIP OF THE WESTERN
EXTENSION OF THE NORTH LINE OF LOT 52 OF TRAILS END
LAKE TRAVIS SUBDIVISION RECORDED IN VOL. 4 PG. 331 OF
THE TRAVIS COUNTY PLAT RECORDS WITH THE CENTER OF
SANDY CREEK.

# TAB C



ASPHALT ROAD

LOT 139
TRAILS END
HOMEOWNERS ASSOC.
(DOC. NO. 2008187492)
0.9990 ACRES

260.69

N59°42'25"E

DRIVE EXTENSION

LEEN

302.67

POSTS
CHAIN

LOT 140

4

6

7

5

TRAILS END LAKE TRAVIS
(VOLUME 4, PAGE 33)

13

9"W 350.85

ION OF THE NORTH
E OF LOT 52

40

S81°11'29